CAHILL (BRONSON v.). See Case No. 1,-926.

## Case No. 2,291.

### CAHILL v. BROWN.

[3 Ban. & A. 580;[1] 15 O. G. 697.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

PATENTS—DRESSING FOR LEATHER — PATENTABILITY—INFRINGEMENT—VALIDITY—ANTICIPATION.

1. Inventors of a new and useful composition of matter, duly secured by letters patent, are entitled to the same protection as the owners of a patent for a new and useful art, machine or manufacture, and the rules and regulations in suits for infringement are the same in all material respects.

2. A claim in a patent for a bronze dressing for leather, as a new article of manufacture, composed of spirit-varnish and aniline fuchsine, with or without the addition of aniline blue or bronze-powder, as set forth and described, held, to be for a patentable invention.

3. Such invention is not anticipated by a prior provisional English specification, which relates to a method of dyeing or staining woven fabrics or paper, and for coloring the surface of glass previously coated with pyroxyline by the application of a solution of the desired color to the previously prepared surface.

4. Nor by a prior patent for a peculiar mode of coloring and bronzing leather cloths, which consists in applying to such cloths, when properly prepared, certain well-known coloring matters composed of solutions of various aniline colors, and then burnishing the surface.

5. Where nothing is contained in the specifications of prior patents which would aid a me-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

chanic to prepare the patented dressing, it follows that they are not of a character to anticipate the patent of the complainant.
[See Jones v. Sewall, Case No. 7,495; Atlantic Giant-Powder Co. v. Parker, Id. 625; Roberts v. Dickey, Id. 11,899; Goff v. Stafford, Id. 5,504.]

6. Where prior patentees approach very near to the discovery of the complainant, but do not discover the principal feature of his invention, and are not able to give any directions by which the same can be successfully prepared and applied, the patent is not anticipated.

7. Letters patent No. 83,925, granted to Miles S. Cahill, November 10, 1868, for an improvement in bronze dressing for leather, held valid.

This suit was brought [by Miles S. Cahill against Benjamin F. Brown] for infringement of letters patent No. 83,925, granted to Miles S. Cahill, November 10, 1868, for an improvement in bronze dressing for leather. The patentee claimed: "A bronze dressing for leather, composed of spirit varnish and aniline fuchsine, substantially as herein set forth, either with or without the addition of aniline blue or bronze powder, all as described, as a new article of manufacture."

Browne & Holmes, for complainant.

George L. Roberts and E. P. Brown, for defendant.

CLIFFORD, Circuit Justice. Inventors of a new and useful composition of matter, duly secured by letters patent, are entitled to the same protection for the property as the owners of a patent for a new and useful art, machine, or manufacture are entitled to receive, and the rules and regulations in suits for infringement are the same in all material respects. Letters patent in due form were granted to the complainant for a new and improved bronze dressing, and the patentee states that the object of the invention is to provide a fluid which will give a reasonably permanent bronze color to leather; that it is more particularly designed as an accessory article in the boot and shoe trade, inasmuch as it will enable dealers to renovate their shoes or boots when the same have become shop-worn and tarnished, as is the case when such goods have been kept on hand for a considerable time, or have been much handled. Boots, shoes or slippers of any ordinary kind, as the patentee states, may be given a brilliant and durable bronze finish; and he also states that the dressing is of important value for family use in renovating partly-worn bronze shoes, to which he adds that the invention consists of a preparation of the aniline color called fuchsine, with any spirit-varnish, as shellac, copal or other analogous gum and spirit varnishes; that a small quantity of aniline blue may be added, if desired, to increase the brilliancy of the dressing; and that he mixes a small quantity of metallic bronze-powder with the fluid, when using it upon metal surfaces. Subsequent to that statement he gives his formula of preparation as follows: Aniline fuchsine,

about two ounces; shellac or other spirit varnish, one pint. Explanations are given as follows: that the fuchsine is mingled with the varnish by means of a pestle and mortar or other suitable means, adding that the limit to the quantity of fuchsine is the point of saturation, or the quantity the varnish will dissolve, which is about two ounces of fuchsine to one pint of varnish. When the aniline blue is added, he adds about one half ounce of blue to the above proportions, and when bronze-powder is added he uses about two ounces of the powder to one gallon of the prepared dressing, always applying the dressing with a soft brush, which, as he states, will dry in one or two minutes. What he claims is a bronze dressing for leather as a new article of manufacture, composed of spirit-varnish and aniline fuchsine, with or without the addition of aniline blue or bronze-powder, as set forth and described. Exclusive ownership of the patent belongs to the complainant, and he charges that the respondent has infringed his exclusive right.

Service was made, and the respondent appeared and filed an answer, setting up the following principal defences: (1.) That the complainant is not the original and first inventor of the improvement. (2.) That it had been patented or described in the patent mentioned in the answer and in the printed publications, or some one of the same, also mentioned in the amended answer. (3.) That it had been in public use or on sale in this country for more than two years prior to the complainant's application for a patent. (4.) That the respondent has never made, and does not now manufacture, bronze dressing in accordance with the formula of preparation set forth in the specification of the complainant's patent.

Defences not urged at the argument are omitted as unimportant in this investigation.

Beyond doubt fuchsine, which chemists sometimes call aniline red, is an article well known in the arts as a useful ingredient in dyeing. It is a solid crystalline substance, found in the form of grains or crystals having a brilliant emerald-green color by reflected light. Spirit-varnish is also well known in the arts and as an article of commerce, and has been for many years. Varnishes of the kind are solutions in alcohol of shellac or of other resinous substances, which, upon drying, leave a compact resinous and glossy coating. Liquid compounds of the kind have been applied to leather, but the objection to such a dressing for leather is that it makes the leather hard and causes it to crack. Efforts were made by the complainant to furnish a mixture that would give the desired coating to leather without impairing its flexibility or durability. Experiments showed him, that by mixing these two ingredients in proper proportions, a brilliant bronze color was developed from the green fuchsine crystal, when applied to leather, without producing any of the bad effects resulting from the use of the ordinary varnish of the shops. Two principal ingredients, fuchsine and spirit-varnish, constitute the mixture, and the evidence shows to the satisfaction of the court that it constitutes a valuable bronze dressing suitable for leather, and that the product, as described and patented, has gone into extensive use. Inquiries were made of the complainant's expert in respect to the nature of the improvement, and in his reply he gave it as his opinion, which seems to be well founded, that the essential feature of the invention consists in the discovery that the green color of the fuchsine may be changed to a bronze color by the use of spirit-varnish, and that the mixture when applied to boots or shoes, instead of stiffening the leather and causing it to crack, renders it more elastic and pliable by the use of the mixture. Beside the two principal ingredients referred to, the patent calls for alcohol and aniline blue, and in some contingencies for a certain quantity of bronze-powder. Instead of aniline blue, the respondent uses aniline violet, but the testimony shows that the latter consists largely of fuchsine and aniline blue mechanically mixed by the manufacturer, and that it performs the same function in the mixture as the ingredient used by the complainant. Argument to show the utility of the mixture is unnecessary, as the utility of the invention is made obvious by what has already been remarked, and the court is of the opinion that the invention is well and properly described, and that all objection to the form of the patent must be overruled. When the patent is correct in form, and is introduced in evidence in a suit for infringement, it is of itself prima-facie evidence that the patentee is the original and first inventor of that which is therein described and secured as his invention. Seymour v. Osborne, 11 Wall. [78 U. S.] 538.

Viewed in the light of that proposition it is clear that the decision in this case must turn upon the sufficiency or insufficiency of the defences set up in the answer. Different theories are maintained as to the way the ingredients operate when mixed to produce the patented product, but the court is of the opinion that it is immaterial, in this investigation, whether the result is produced by mechanical or chemical action, it being shown to a demonstration that the change of color is produced by mixing the ingredients, and that the mixture, instead of stiffening the leather and causing it to crack, renders it more elastic and pliable. Cahill v. Beckford [Case No. 2,290].

I. Coming to the defences, the first is that the patentee was not the original and first inventor. Proofs of various kinds were introduced in support of that proposition, of which those deemed most material will be examined. (1.) Rollason's provisional specification, which relates to a method, not satisfactorily described, of dyeing or staining woven fabrics or paper, and for coloring the

surface of glass previously coated with pyroxyline, by the application of a solution of the desired color to the previously prepared surface. 4 Watts' Chem. Dic. 776. Complainant's expert examined the specification. and testified to the effect that it does not describe or suggest, in the most remote degree, the dressing which is the subject of controversy. (2.) Two patents or specifications, one English and the other American, were also introduced to support the first defence. They relate to a peculiar mode of coloring and bronzing "leather cloths," which will give a superior effect over that which can be obtained by the ordinary mode; and the invention is described as consisting in applying to such cloths, when properly prepared, certain well-known coloring matters, consisting of solutions of various aniline colors, and then burnishing the surface. Suffice it to say they do not describe nor suggest the bronze dressing of the complainant, nor do they specify the ingredients or proportions to be used in preparing the solution. Nothing is contained in the specifications which would aid a mechanic to prepare the patented dressing, and it follows that they are not of a character to supersede the patent of the complainant. Seymour v. Osborne, 11 Wall. [78 U. S.] 555. (3.) Patent to Story, Bickerdike and Wilson, together with the prior provisional specification previously filed by the patentees. As described in the specification, the invention is a new method of bronzing metallic and other surfaces, and consists in the application of solutions, more or less concentrated, of aniline dyes, in alcohol or other volatile solvent, which possess a brilliant bronze-like lustre in the solid state, to polish prepared surfaces, and the statement is that when the solvent evaporates, either at ordinary or elevated temperatures, a film of the solid dyestuff remains upon the surface, presenting its characteristic lustre.

Superadded is also the statement that the solution may contain shellac or other soluble gum, for the purpose of rendering the bronzed surface more durable; but no proportions are given, nor are any directions suggested or indicated, which would enable any one, skilled or unskilled, to prepare the patented dressing, nor is there any hint conveyed that, by the mixture of fuchsine with spirit-varnish in certain proportions, the green color of the fuchsine will be changed to bronze color by the action of the varnish, nor that the mixture, when applied to leather, will render it more elastic and pliable. Suppose it be admitted that the patentees in that patent approached more nearly to the discovery of the patented dressing of the complainant than any inventor that preceded in the invention in controversy, still it is clear to a demonstration that they did not discover the principal feature of the patented dressing in question, and were not able to give any directions by which the same can be successfully prepared and applied. (4.) Specifica-

tion, completed and provisional, of Alexander Parkes is also set up in defence, which purports to describe an invention for improvements in ornamenting surfaces of paper, woven fabrics, and other material, to render the same suitable for book-binding and other similar uses.

For that purpose the patentee states that he embosses the paper, fabric or material, so as to form numerous small hollows or undulations in the surface, and then coats the surface with a thin varnish, consisting of dissolved pyroxyline or parkesine and fish-scales, the statement being that the fish-scales, for the most part, settle into the hollows, and as the solvent evaporates they become fixed in the hollows, and then the light playing on the undulations, and being strongly reflected by the fish-scales, where it strikes at a suitable angle, a very pleasing and brilliant effect is produced; and he adds that the paper, fabric or material may also be embossed subsequently to the application of the pearly varnish. Substitutes are also suggested in the specification, as follows: That in the place of a varnish made with fish-scales and parkesine, the varnish may be made with shellac, gelatine or other material, in lieu of parkesine, and that in some cases he prepares a varnish with dissolved pyroxyline or parkesine and aniline dye, which, when crystallized, has a metallic lustre, which, as he states, he applies to the surface of the paper, fabric or other material, and, as the solvent evaporates the dye is deposited with a metallic lustre. Surfaces prepared in that manner may, as the patentee states, be embossed as in the former case, and he further adds that he sometimes applies a varnish containing a bronze-powder to an embossed surface of paper, fabric or other material, so that the powder may be deposited in the hollows already described. Proportions of the ingredients to be used are then given in detail, and directions for mixing the compound, but they are so entirely different from the formula given in the complainant's patent for making the patented dressing that it is deemed wholly unnecessary to reproduce the same. Opposed to that conclusion is the testimony of the expert examined by the respondent. He says that specific directions are given in terms in the preceding patent for mixing fuchsine with shellac-varnish, without giving the usual admixture, but he is of the opinion that one skilled in the art would see, as he went on experimenting, that shellac would answer the purpose of pyroxyline, and that it would occur to him that the one might be substituted for the other; but that is not what the patent law requires.

Inventions patented here cannot be superseded by the mere introduction of a foreign patent or publication, though of prior date, unless the description or drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear and exact terms as to enable any person

skilled in the art or science to which it appertains, without the necessity of resorting to experiments, to make, construct and practice the invention, as he would be enabled to do from a prior patent for the same invention. Betts v. Menzies, 7 Law T. (N. S.) 110. Even suppose the statements of the witness were uncontradicted, still they are not sufficient to support the defense under consideration; but they are not uncontradicted, as appears from the testimony of the expert examined by the complainant. His opinion is stated with great fullness and clearness. He says the exhibit describes a preparation for ornamenting various surfaces made by the use of a compound called "parkesine," by the use of a thin solution of the substance in which is dissolved from one to ten per cent. of crystallized aniline color; that the directions of the patent in any of the proportions given would give a varnish which would simply produce the same appearance as the natural color of the crystal of the aniline dye employed. Take one hundred parts of parkesine solution and mix it with from one to ten per cent. of crystallized fuchsine, and the result of allowing the solvent to evaporate would be to give a green metallic lustre after its application to a suitable surface, and he adds that nothing would be produced like the patented dressing by following the directions of the patent introduced in defence. Fuchsine, as he says, is nowhere mentioned in the patent, and he states that he finds in it no directions for the production of a bronze-varnish suitable for leather by the use of a green crystal like fuchsine and shellac-varnish.

Comparing the testimony of the two witnesses together, the court is of the opinion that the statements of the latter are correct, and that the exhibit given in evidence is not of a character to prove the first defence. Proof in the form of depositions was also introduced by the respondents, to show that the dressing patented had been prepared, compounded and used by others prior to the supposed invention by the complainant. Four of those defences will be examined without entering at large into the details of the evidence, as that would extend the opinion beyond reasonable length.

One. Evidence of antecedent patents failing, the next defence is that the bronze dressing patented to complainant was invented by James A. White, prior to the invention described in the bill of complaint. Complainant's patent bears date November 10, 1868, and inasmuch as the record does not show the time when the application was filed, the prima-facie presumption is that the invention was made at the time the patent bears date.

White, the supposed inventor, died April 5, 1872, and respondent examined two principal witnesses, the son and the daughter, to prove this defence. According to the testimony of the son, the father was a dyer of silk, woollen, cotton and straw, and carried on business at South Canton, Massachusetts, and he states that he went into his father's employment in the spring of 1866, and that he left in the fall of the following year; and he also states, that while he was in the employ of his father he prepared a dressing made of shellac, alcohol and fuchsine, though he admits the latter substance was not known by that name at that time, nor does he state by what name it was known when he prepared the dressing. When asked if he had occasion to know the proportions of the ingredients used, he answered in the affirmative, and stated that he remembered the formula of four different kinds, as follows: 1. Formula for class A: one third of an ounce of shellac, one ounce of alcohol, one sixth of an ounce of fuchsine to each ounce of alcohol. 2. Formula for class B: one fourth of an ounce of shellac to each ounce of alcohol, and one sixth of an ounce of fuchsine to each ounce of alcohol. 3. Formula for class C: three drams and twenty grains of shellac to each ounce of alcohol, and one sixth of an ounce of fuchsine and one quarter of a dram of sulphuric ether to each ounce of alcohol. 4. Formula for class D: one sixth ounce of fuchsine to each ounce of alcohol, one sixth of an ounce of shellac to each ounce of alcohol, and one fourth dram of blue aniline to each ounce of fuchsine used

He was then requested to state for what purpose each of the dressings was used, and he answered that class A was made to be used for leather and iron, class B for plaster and brass, class C for paper and cloth, class D for straw, adding that all this was as near as he could remember, and that the dressing was sold in a liquid form, including a large quantity of all the different classes. Inquiry being made of the witness whether he had recently manufactured the four classes of dressing, he said he had, and produced exhibits to that effect. On cross-examination he stated that the bronze he first saw was the bronze that his father had brought into practical use prior to his return from the army. Experiments, it seems, were subsequently made in order to make it water-proof, without success, the witness admitting that the result was wholly unsatisfactory. Most of the father's experiments were made while the witness was absent in the army. They were practiced, as his father told him, at different times for a period of nearly two years, and he states that his father finally concluded, as he informed him, that gum-shellac gave the most satisfactory results, and that he (the father) thought if the liquid could be brought into practical use, with any degree of durability imparted to it, he would be amply repaid for all his experiments. None of these experiments were within the personal knowledge of the witness, and he expressly testifies that the experiments made by his father, after he (the son) returned from the army, consisted of endeavors to make the bronze water-proof.

Support to the testimony of the son is derived from the testimony of his sister. He produced a recipe for class A, to the effect following, to wit: one third of an ounce of shellac to one ounce of alcohol, and one sixth of an ounce of fuchsine to one ounce of alcohol, and the sister testified that she wrote that formula, by her father's directions, between the spring of 1866 and the fall of 1867, after her brother's return, and that she applied it to the two exhibits specified in his testimony. Other witnesses were examined, and other circumstances proved, tending to confirm the testimony of the brother, and in support of the theory that the father invented the patented dressing prior to the date of the complainant's patent. Much countervailing proof was introduced by the complainant, which is decidedly contradictory to the testimony of the son, and tends strongly to show that the father never made any such invention, that he never knew that the effect of using spirit-varnish with fuchsine would be to change the green color of the fuchsine to a bronze color, or that the mixture, when properly made, would render leather more elastic and flexible. Enough appears to warrant the conclusion that the father made some kind of dressing for the goods which he was in the habit of dyeing in his business, but it is equally clear that it was never satisfactory, and that he bought as much, or more, dressing of another manufacturer than he ever sold during the period when it is said he manufactured a dressing like that described in the complainant's patent. Two years after the son left him he gave up his business and never resumed it, and ceased to manufacture dressing of any kind, nor did he ever include in his business the bronzing of leather.

Taken as a whole, the evidence convinces the court that he (the father) never knew that the color of the crystals in fuchsine would be changed by the use of varnish, even if he knew anything of the properties or components of the former substance, or of the effects the mixture would produce when applied to leather, which are matters of grave doubt. Solutions which would produce a green metallic lustre, it appears, were quite common during the period when the son of the supposed inventor was in the employ of his father, and perhaps for a year or two later, and the evidence shows that they were chiefly used to color straw and other millinery goods, when first introduced, but the complainant's expert testifies that they did not in any respect resemble the appearance of complainant's dressing. Quite a number of straw-goods manufacturers employed the witness about that time to experiment for them with a view to produce a good bronze for ornamenting hats, and he states that he examined many bronzed hats, and solutions used for bronzing the same, and that he made many experiments in the same direction. Where a green reflection was desired fuchsine was used, and where a bronze was wanted aniline violet or blue was employed, and he adds that in all the samples examined the bronze produced was substantially the same color as the crystal employed, though inferior in lustre. Green crystal, as the witness states, was used but little, the bronze produced by violet or blue being the favorite color; and he states that the addition of sufficient varnish to make the bronze reasonably permanent, reduced the brilliancy so as to make it useless. The bronze in that period was produced by adding very little varnish to a comparatively strong solution of blue or violet, and in that way a fair bronze was produced, but it was not permanent, nor sufficiently so to render the hats wearable, and they rapidly went out of use. During the summer of 1867 the witness states that all the straw manufacturers of his vicinity were making these styles of hats, in imitation of goods received from Paris, and that many, including himself, were experimenting for the purpose, if possible, of making the bronze permanent, and at the same time satisfactory in color; and he adds, in that connection, that he was unable to do so, and that the same, so far as he knows, was true of all the other parties engaged in such experiments. Endeavors of the kind being unsuccessful, the style of hats was abandoned, and the witness states that he never heard of a bronze-varnish, which had a good color and was reasonably permanent, until his attention was called to the process of the complainant, which coincides, strikingly, with what the son states that his father told him upon the same subject, to wit: that the father thought, if the liquid could be brought into practical use, with any degree of durability imparted to it, that it would amply repay him for all his experiments.

Both sides agree that fuchsine was not known among mere practical men by that name, nor does the son or daughter state by what name it was known when used by their father. Repeated experiments were made by Consider Southworth for the purpose of producing a bronze-varnish, and it appears that he made and used a mixture of the kind, which in the year 1867, he sold to James A. White in considerable quantities, as appears by the record. His mixture was set up in the prior case as superseding that of the complainant, but it will not be necessary to give that matter any examination beyond what it received by the court in that case. Cahill v. Beckford [Case No. 2,290]. By the opinion of the court it appears that Southworth produced and sold an article which answered the purpose for dressing straw hats or bonnets, or for giving a fancy finish to the edge or shank of a boot or shoe, imparting a gilt or goldish color, but the judge states that the evidence showed that it was

not suitable for leather, and that the method of making it will not produce a good dressing of any kind for leather, and certainly not a dressing substantially like the complainant's patent. Persuasive support to the theory of the complainant is also derived from the testimony of John Dehm, who for several years was in the employ of the party whose bronze dressing is set up as anticipating that of the complainant. He commenced to work with White in 1864, and did not leave his employment until November or December, 1867, covering the whole period the son was in the employment of his father after the former returned from the war of the Rebellion. Speaking of their attempts to mix dressing, he says they tried to mix shellac, aniline blue, and blue purple with alcohol, and did not succeed—could not make it work—and then tried to mix half of their mixture with half of that prepared by Southworth; that then they could get a color out of the mixture; that they tried to use a great many other things, but they did not amount to anything, and they did not use them, but threw them away, and never got a good thing out of their experiments; that only a half-gallon of the whole they made was fit to use by mixing it with the dressing of Southworth. Attempt is made to contradict the witness, but the testimony introduced to confirm his statements, in the opinion of the court, outweighs that which was introduced to impair his credit. Suffice it to say, without entering further into details, that it is conclusively proved that White, during the period in question, bought bronze dressing of Southworth in quantities sufficient to account for all his sales, without giving the least credence to the theory that he ever invented or knew anything about the patented product of the complainant.

Two. Suppose that is so, still it is insisted by the respondent that the testimony of Isidore Birgé is sufficient to establish the defence of prior use; but the court is entirely of a different opinion. for at least two reasons: (1.) Because the statements of the witnesses are not sufficiently definite as to the time when he commenced to manufacture the dressing. His recollection is that it was in November or December, 1866. but Emile L. Bisset, his dyer, states that the first time they tried to make the substance, four years ago, which was in 1873, they did not exactly succeed, which must be regarded as supplying an important defect in the memory of other witnesses. (2.) Because there is not enough in the testimony of the first witness to show what the proportions were of the ingredients which they used.

Three. Special reference is also made by the respondent to the testimony of Frederick Rodrigo for the same purpose. What he states is that in November, 1866, he used a dressing made of shellac-varnish and aniline red, or fuchsine, for bronzing piquets, wild grasses, leaves, hats, and flowers. His formula of preparation. if such it may be called, was shellac, aniline red, and alcohol, sometimes blue aniline, sometimes violet, and the proportions of the ingredients, as given by the witness, were about twenty cents' worth of shellac, thirty-five cents' worth of alcohol, and two ounces of aniline. They let it stand over night, and then diluted it with alcohol and shellac about one half; and he adds that they first dissolved the shellac in the alcohol, and put in sufficient aniline until it became the shade of color they wanted to use. Throughout, his testimony is very ambiguous, and shows to the entire satisfaction of the court that he never had any idea, theoretical or practical, of a bronze dressing in which the original green color (fuchsine) was changed by a given proportion of varnish so as to produce a permanent bronze on the surface to which it was applied. Instead of that it is clear that if he ever produced a bronze it was by the use of aniline violet or aniline blue, so fully explained and shown to be worthless by the expert witness of the complainant.

Four. Incomplete as the explanations as to the manner of compounding the mixture are, as given in the printed publication referred to in the testimony of William J. Jenks, it will be sufficient to say in respect to it that it is not of a character to support the defence, that the complainant is not the original and first inventor of the patented improvement, nor is there anything in the testimony of that witness which can have any such effect, for the following reasons: (1.) Because the date of the supposed manufacture by the witness is not fixed with sufficient definiteness. (2.) Because the testimony of the witness leaves it uncertain what were the proportions of the ingredients used in manufacturing the alleged dressing. (3.) Because the dressing which he manufactured was not substantially the same as that described in the specification of the patent.

II. Remarks to show that the second and third defences cannot be sustained. beyond what have already been made. are quite unnecessary, and they are accordingly overruled. Suggestion is made that the court in the prior case was misled by the testimony of one of the complainant's witnesses, but the court as now constituted is not able to see any just foundation for that supposition, or that the suggestion, if correct, can have any material bearing in the determination of the present controversy.

III. By the rules of law the respondent must prove want of novelty, and the complainant must prove infringement, which is the only remaining question to be considered. Since the argument, the question has been carefully considered by the court, the result of which is that the doubts which then arose in the mind of the court have all been removed, for the following reasons: (1.) That the practical working of the mixtures is substantially the same. (2.) That the flexi-

bility, reflection, and durability of the same, are substantially alike. (3.) That the development of the bronze appearance from an aniline color, having a green reflection, is accomplished in both cases by the same means and according to the same principles. (4.) That the change in the color of the fuchsine is accomplished by the same means, and that the beneficial effect produced by the mixture is the same, whether made by the one or the other formula.

Decree in favor of complainant for an account, and for an injunction.

[NOTE. Patent No. 83.925 was granted to M. S. Cahill, November 10, 1868. For another case involving this patent, see Cahill v. Beckford, Case No. 2.290.]