HANIFEN v. E. H. GODSHALK CO. et al.

(Circuit Court of Appeals, Third Circuit. January 17, 1898.)

No. 19.

1. PATENTS—ANTICIPATION BY FOREIGN PATENT.
   A patent is not anticipated by a prior foreign patent, unless the descriptions or drawings of the latter exhibit a substantial representation of the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments.

2. SAME—EXPERT EVIDENCE.
   Mere opinions of experts, unsupported by convincing and satisfactory reasons, that a patented article may be produced by following the directions of a prior foreign patent, will not bind the court against its own judgment.

3. SAME—KNITTED FABRICS—ASTRAKHAN CLOTH.
   The Bywater patent, No. 374,888, for improvements in knitted fabrics, whereby a cloth is produced having the appearance of Astrakhan cloth, held not anticipated by the prior Booth British patent, No. 756, of 1881, nor shown to be invalidated by abandonment or prior use in this country.

   Butler, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a suit in equity by John E. Hanifen, trading as John E. Hanifen & Co., against the E. H. Godshalk Company and E. H. Godshalk, for alleged infringement of letters patent No. 374,888, dated December 13, 1887, to Levi Bywater, for improvement in knitted fabrics, whereby an article is produced having the appearance of looped or Astrakhan cloth. The circuit court held that the patent was anticipated by the Booth British patent, No. 756, of 1881, and accordingly dismissed the bill. 78 Fed. 811. The complainant has appealed.

Joseph Fraley and Wm. P. Preble, Jr., for appellant.
Strawbridge & Taylor and Edmund Wetmore, for appellees.

Before SHIRAS, Circuit Justice, ACHESON, Circuit Judge, and BUTLER, District Judge.

ACHESON, Circuit Judge. The Bywater patent in suit is for a new manufacture, namely, a knitted fabric whose face is matted and curly, presenting the appearance of Astrakhan cloth. To produce this knitted fabric, the face yarn must be of mohair or a curly, crinkly wool, and the yarn must be put in long floats, so that it will mat and curl, thus imparting to the face of the fabric an Astrakhan like appearance. The specification and drawings of this patent seem to be perfectly intelligible to skilled knitters, giving them all needed directions. No witness has testified, nor is it

alleged, that the patent fails to give to any practical knitter such full and clear information as will enable him to make the patented fabric. This fabric has become a well-known article of commerce, and is now extensively used.

Infringement of the second claim of the patent is here complained of. That claim is as follows:

"(2) A knitted fabric, composed of face and back yarns of different materials, the face yarn being looped at regular intervals, and on alternate stitches of adjacent rows of the back yarn, and being matted and curly, and having a smooth back, whereby the said fabric has the appearance of looped or Astrakhan cloth, as described."

It appears from the brief of the appellees (the defendants below) that four defenses are relied upon, viz.: (1) "Anticipation of the patent in suit by the patents set up"; (2) "public use and sale in the United States of the patented fabric more than two years prior to the application for the patent in suit"; (3) "abandonment"; and (4) "noninfringement." All these defenses were overruled by the court below, except the single defense of anticipation by the British patent of 1881, to James Booth.

Now, taking up the defenses in an order the reverse of the above enumeration, and first dealing with the question of infringement, we find in this record positive evidence showing the manufacture by the defendants of the fabric described in the patent in suit, and covered by its second claim. The evidence is certainly sufficient to sustain the allegation of infringement made in the bill.

With respect to abandonment, a careful examination of the proofs leads to the conviction that that defense is not well founded. Bywater's application for the patent in suit was filed on December 22, 1883. If he abandoned his invention to the public, it must have been prior to that date. Under all the circumstances shown, it would be going a great length to impute to him the intention to relinquish his invention. Then, we do not perceive any just ground for an estoppel against him. It does not appear that he misled any one by what he did or by what he omitted to do. Moreover, the court below found that the proofs did not carry back Bywater's perfected invention beyond the date of his application for this patent. That position was taken in the court below by the defendants, who thus successfully met the attempt of the plaintiff to antedate Booth. But, if Bywater's invention was not in a completed form until the date of his application, it is very hard to see how an abandonment is to be ascribed to him. The court below did not err in disallowing this defense.

The defense of two years' prior use and public sale in the United States rests upon the importation by H. Herman Sternbach & Co., at the port of New York, in May, 1881, of certain pieces of "kyrle" cloakings. We agree, however, with the learned judge of the court below, that there is "room for very grave doubt" whether those goods were the knitted Astrakhan of this patent; and we also concur in his view that there is a failure of satisfactory evidence to show that they passed into public use, or were put on sale. The evidence of prior use or sale did not reach the standard of cer-

tain proof required to sustain such defense. Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970.

We have carefully considered the British patent of 1849 to Henry Dunnington, the British patent of 1857 to Ball & Wilkins, the United States patent of 1875 to Kent & Leeson, and the United States patent of 1883 to S. N. Levy, which are insisted upon by the defendants as anticipating Bywater. In our judgment, these patents, taken singly or together, do not embody or disclose the Bywater invention. We adopt the views of the court below as expressed in its opinion touching this branch of the defense, and we concur in its conclusion that none of the four above-named patents are anticipatory of the invention of the patent in suit.

This brings us to a consideration of the British patent of 1881 to James Booth. The case, we think, turns upon the question whether the Booth patent disclosed the Bywater invention. Now, it is a well-settled and familiar doctrine that an invention patented here is not to be defeated by a prior foreign patent unless its descriptions or drawings contain or exhibit a substantial representation of the patented invention in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains, without the necessity of making experiments, to practice the invention. Seymour v. Osborne, 11 Wall. 516, 555; Cahill v. Brown, 3 Ban. & A. 580, 587, Fed. Cas. No. 2.291.

Mr. Robinson, in his work on Patents (volume 1, § 329), discussing the kindred defense of prior publication, states the rule thus:

"The invention described in the publication must be identical in all respects with that whose novelty it contradicts. The same idea of means, in the same stage of development, as that which the inventor of the later has embodied, must be thereby communicated to the public."

Again, the same learned author (section 335), in treating of the defense of a prior patent, says:

"So, when the inventor of the patented invention has included in his art or instrument some act or part, without perceiving its significance, and thus, in patenting it, fails to specifically describe such part or act, although, if his invention had been practically employed, such act or part might have become known to the public, his patent does not place it in their reach."

Applying these principles here, can it fairly be said that Booth's patent disclosed the Bywater invention, or brought it within the reach of the public? If any such disclosure was made, it must be found in the following cited clauses of Booth's specifications. After stating that his invention relates "to means whereby a novel description of fabric is produced on that class of knitting machinery known as the circular or French frame," Booth proceeds thus:

"For this purpose I form the back of the fabric of the ordinary looping threads, using ordinary wool yarn for such purpose, and I form the face of the fabric on that part which has usually been considered the back. For this purpose, I employ worsted or long fibered yarn for the face, which is laid in between the needles in any desired order; such face yarn being tied to the looping thread by the tie thread usually employed in the manufacture of fleecy backed hosiery. The fabric, after removal from the machine, is subjected to the process known as 'fulling,' or 'felting,' whereby the back

or knitted portion of the fabric becomes considerably shrunk, and the fibers thereof felted together, whilst the face yarn, being laid in straight, and tied to the body or back at longer or shorter intervals, is caused to project from the back or body of the fabric in the form of loops, thereby producing a very ornamental appearance."

Booth's claim reads thus:

"The manufacture of a novel description of fabric on that class of knitting machinery known as the circular or French frame, by employing woolen (felting) yarn for the body or back of the fabric, and longer fibered (unfelting) yarn for the top or face of the fabric, which is made on that side usually considered the back, and afterwards fulling or felting such fabric, substantially as herein described."

The foregoing is the entire information touching Booth's fabric contained in his patent. His drawings do not show the fabric either during the process of manufacture or in a finished state. His patent makes no reference to Astrakhan or Astrakhan cloth. It contains no hint that his fabric is to have an Astrakhan like appearance. It gives no directions whereby a resemblance to Astrakhan cloth can be attained. It says nothing about a curly or wavy surface. It does not state that his loops are to be matted and curled. On the contrary, his statement is that, by the process of fulling or felting, the back of the fabric "becomes considerably shrunk," and the face yarn is caused to project "in the form of loops, thereby producing a very ornamental appearance." Evidently, the described loops thus produced are plain loops. The essential features of Astrakhan cloth are lacking. It is clear to us from the face of Booth's patent that the product therein described and thereby attained is something altogether different from the fabric described and produced by Bywater in and by the patent in suit.

The contrary conclusion, which the able judge of the court below reached, was based upon the effect which he felt constrained to give to the testimony of the defendants' professional expert, their foreman, and two knitters. We have examined that testimony with the utmost care, and we are obliged to say that, in our opinion, it does not justify a decree adverse to the patent in suit. This testimony strikes us as very meager. It consists of little more than the bare opinions of the witnesses that Booth's patent discloses the Bywater fabric. The witnesses really give no reasons for their conclusions. No detailed analysis of Booth's specifications is made by any of them. None of them pretend that any of the terms employed in Booth's patent require explanation by an expert. No such elucidation is attempted by any of them. These witnesses call the Booth fabric "Astrakhan cloth," and say that, by following the directions of Booth's patent, without more, Astrakhan cloth can be produced; and one of them states that he has done this. This is the whole substance of their testimony. Ought it to be controlling? We think not. Testifying in 1896, it was impossible for these witnesses to divest their minds of their then knowledge respecting the Bywater fabric and the mode of its production, even if they had been unbiased. But what a willing witness

in 1896 might read into the Booth patent is no fair test. The true question is, what did that patent disclose to the public in 1881? We are well satisfied that the expert testimony of the defendants' witnesses furnishes no safe aid in the solution of that question. The Booth patent speaks for itself, and its meaning is to be determined by the court.

The language of the Booth patent which we are called upon to consider is of easy comprehension. The following observations of the supreme court are here pertinent:

"The words used are not technical, either as having a special sense by commercial usage, nor as having a scientific meaning different from their popular meaning. They are the words of common speech, and, as such, their interpretation is within the judicial knowledge, and therefore matter of law." Maryel v. Merritt, 116 U. S. 11, 12, 6 Sup. Ct. 207.

In Norton v. Jensen, 1 C. C. A. 452, 49 Fed. 859, 864, the circuit court of appeals for the Ninth circuit well said:

"If the reasons given by the expert witness are deemed reasonable and satisfactory, the court may adopt them; but, if they are unsatisfactory, the court will discard the testimony, and act upon its own knowledge and judgment. It is always the duty of the courts to construe the patent by reference to the language of the claims and an examination of the specifications and drawings accompanying the same."

In National Co. v. Belcher, 71 Fed. 876, 879, this court, speaking by Judge Butler, in refusing to give controlling effect to the testimony of a competent mechanic, who stated that, by following the directions of an earlier patent, he had made a device identical with the one in controversy, said:

"If a valuable patent might be overthrown in this manner by the testimony of an expert, without careful inquiry into, and virtual demonstration of, its correctness, the rights of patentees would rest upon the testimony of such witnesses, rather than the judgment of the court."

Here the defendants' expert witnesses fall very far short of demonstrating the correctness of their testimony. They do not give any satisfactory reasons to sustain their statements. Virtually their testimony is the expression of mere opinions. But, convinced by our investigation that Booth's patent neither described Bywater's fabric nor disclosed to the public the means for its production, we must follow our own judgment. The decree of the circuit court is reversed, and the cause is remanded to that court, with directions to enter a decree in favor of the complainant in the bill.

BUTLER, District Judge (dissenting). I am unable to unite in the conclusion above stated. Passing over the questions of abandonment and prior use raised, and putting the case on the ground of anticipation by Booth's patent, I believe the decree of the circuit court should be affirmed. It is not important that Booth does not call his fabric "Astrakhan cloth"; his method of manufacture described, in my judgment, covers everything described by Bywater; and the expert witnesses called testify positively that the methods described in both patents are the same; that Booth's description if followed will produce Astrakhan cloth—one of them saying he tested it by experiment and proved this to be so. The

appellant has allowed this testimony to stand without contradiction. It is not justifiable to say that the witness could not have made Astrakhan cloth by Booth's method at the date of Bywater's patent though he may have done it in the light of subsequent knowledge, in the absence of evidence tending to prove it. The question involved is one of fact which the circuit court, as its opinion shows, considered with unusual care; and its judgment is entitled under the circumstances to much weight.

Granting however that there is some difference in the two methods, it is not such, in my judgment, as involves the exercise of invention.