PRESSED PRISM PLATE GLASS CO. v. CONTINUOUS GLASS PRESS CO.

(Circuit Court, W. D. Pennsylvania. February 1, 1907.)

No. 14, November Term, 1904.

PATENTS—VALIDITY AND INFRINGEMENT—APPARATUS AND PROCESS PATENTS— PLATE PRISM GLASS.

The Ripley & Wadsworth patents, Nos. 661,025 and 661,024, for a process and apparatus, respectively, for making glass plates with prisms on one surface in two operations, which consist of first rolling the plate or sheet of glass and then pressing the same by means of a die while still plastic to produce the required prism pattern, were not anticipated and disclose invention. Both also *held* infringed. Patent No. 661,023 to the same patentees for the product of such process and apparatus as a new article of manufacture is void for anticipation; such article being already known and made, and that made by the patented process being, at most, only an improvement upon that of the prior art.

In Equity. Suit for infringement of letters patent Nos. 661,023, 661,024, and 661,025, relating to the art of making prism glass, granted October 30, 1900, to Daniel C. Ripley and Frank L. O. Wadsworth. On final hearing.

Thomas W. Bakewell and Marshall A. Christy, for complainants.
Augustus B. Stoughton, for defendants.

ARCHBALD, District Judge.[1]  The patents in suit relate to the manufacture of plate prism glass; that is to say, glass in sheets or plates, having transverse parallel projections, or ribs, upon one side, in the form of prisms, a character of glass extensively used to illuminate the interior of buildings darkened by adjoining structures. There are three patents involved—one for the machine or apparatus by which the glass is made; another for the method or process; and

[1] Specially assigned.

the third for the manufactured article. The prior state of the art, and the conditions to be overcome, as well as the means devised for doing so, are thus described by the inventors in the specifications:

"Heretofore in the manufacture of such prism-glass it has been the most approved practice to press the prism-surfaces in molds in the same manner in which glass articles are ordinarily pressed, a gathering of glass being placed in the mold and the plunger being brought down upon it, so as to displace it and to cause it to flow into all portions of the mold-cavity and to assume the contour and configuration thereof. It has been found that in this method of manufacture it is not practicable to make prism plates or pieces of large size, and they generally have been made of not more than three or four inches square. The reason of this is the difficulty of causing the glass to flow in the mold while cool enough to prevent burning of the sharp projecting portions of the forming-surface of the latter. Moreover, owing to the means of manufacture employed the prism-plate when pressed, even of such small size, lacks strength and is apt to be broken. It cannot be cut with a diamond, for when the surface is scored by the cutting-tool it will crack and break upon irregular lines. These practical difficulties have limited the utility of such glass-prism surfaces, for making of the pieces in small sizes increases the difficulty of assembling them, and the frame in which they are assembled is expensive to make and is more or less unsightly and to some extent excludes the light. Attempts to make prism projections by making the prism-pattern on the sheet-forming roll or on the table of the rolling-machine have been unsatisfactory, so far as we are aware, on account of the difficulty in forming a deep prism-pattern by such operation. We have discovered that all these difficulties heretofore experienced can be avoided and glass-prism surfaces made by our improved apparatus in single pieces of large area without impaired strength and capable of being cut with a diamond or other cutting device either parallel with or at an angle to the line of the prisms. Thus instead of forming the glass as heretofore by a single operation of pressing in a mold or rolling on a table we employ a mechanism comprising in combination two main parts, namely, a rolling-table on which we first roll out the glass into a flat mass and a vertically-moving upper die which may be of the dimensions required for the glass sheet and is shaped on the under side to produce the required prism-pattern. While the flat mass of glass is still plastic this die is brought down upon the surface of the glass, displacing the glass upwardly into the crevices of the pattern, with every portion of which the material is forced into contact until formed to prismatic ridges of glass having sharp angles, finished faces, and clean-cut outlines. In order to produce finished surfaces, the die must be brought against the glass with sufficient pressure to force the glass into contact with the mold over the entire surface thereof. In other words, the glass must be forced against the whole surface of the pattern under pressure."

Distinguishing the method from others which had gone before, it is further said that it—

"Comprises two steps, namely, producing a substantially flat sheet of glass and then forming prisms on the surface of the sheet by pressure exerted in a direction transverse to the plane of the sheet upon the entire cross section of the portion to be ribbed. In this operation portions of the previously-rolled mass of glass while still plastic are simultaneously, over the entire area covered by the die, caught and confined between and in contact with the adjacent ribs by which the prisms are molded, and being thus segregated and confined are compelled to flow upward between the ribs, so as to form raised prism-shaped ridges or apices, and this, systematically done over the surface of the sheet, constitutes, as we believe, one of the important features of novelty and utility. By this method two important results are secured. First, inherent molecular straining of the glass is prevented, because in the preliminary spreading the glass is so hot and plastic that it flows freely and in the second step of the operation there is a slight uniform vertical motion of the glass particles, but no substantial lateral spreading thereof, and, second, definitely shaped and polished surfaces are secured by bringing the polished surfaces of

the figuring-die into intimate contact with the material of the glass over the entire cross-section of the ribbed portion."

"Our improved apparatus," say the inventors, "is distinct from all prior machines in the use of a forming or molding die which does not operate merely to cut into the surface, but which acts to mold the upper body of the previously-rolled mass of glass, so as to destroy what would otherwise be a level surface and impart to the body of the material different transverse sectional form."

This fairly represents the existing state of the prism glass art at the time the inventions in suit were projected into it, and the advance upon it which was thereby made. According to the Heidt (1899) patent for instance, for the molding of prism tiles, the glass in a plastic state was pressed by a plunger upon a die or mold, by which prism ridges were formed upon its surface. The prisms as made were of fairly sharp outline. But the operation being single, and the glass having not only to be displaced vertically into the angles of the die, in order to make the prisms, but also having to spread laterally, in order to reach the edges of the mold, the tiles so formed were not only of necessarily limited size, but the glass, of which they were made, was subjected to such internal molecular strain that it was very much weakened and could not be successfully cut or scored. A number of tiles, also, having to be assembled together and set in a metal frame in order to make up the required area for a window, not only did this add to the cost, but the rays of light, none too many, were materially obstructed, and a place furthermore afforded for the lodgment of dirt and dust, which, particularly in a place like Pittsburg, detracted seriously from the commercial acceptance and efficiency of the article.

The same objections do not obtain with regard to the rolled prism plate, but there were others which were encountered. By the method of making this, found in the Cummings patent (British 1898)—with which the Walsh (1869) the Stevens (1870) and the Boughton (1880), also all British, are to be classed—the glass in plastic state was poured onto a table having longitudinal V-shaped grooves, and a roller was passed over it, or the table might be flat and the roller grooved. The glass in this way could be spread to any desired extent, without structural distortion, but the difficulty was in securing sharpness and accuracy of outline, as well as depth or prominence of the prisms. If the material, for example, was too hot, it adhered to the grooves of the table or roller, leaving roughnesses where the prisms were detached; or, on the other hand, as the formation of the prisms depended on the plasticity of the glass rather than the pressure of the roller, which was but momentary, if the glass was not hot enough, becoming chilled by contact with the table, it was liable not to flow down into the angles of the grooves as it should, allowing only the production of shallow prisms at the best, and these often rounded at the point, instead of being sharp and well defined. Rolled prism plate had also to be made so thin that it could not be polished, and had thus to be put upon the market in a comparatively imperfect state.

The two processes which have so been referred to were the only ones prior to that of the complainants', which were strictly devoted to the production of prism glass. Another, however, in which it is

claimed to be involved is the Miller (British) patent (1895), also taken out shortly afterwards in the United States in a somewhat modified form. Like Cummings and the others mentioned, it had to do with the making of plate, if not prism plate, glass; and the particular part of the prolix, not to say ambiguous specifications, upon which stress is laid, is the provision by which, after the glass is rolled into a sheet, it is subjected to pressure between an upper descending table or platen and the table upon which it rests moved upwards by hydraulic force; it being further provided that the reversible double sections of the plates, which make up the face of the lower table, may have one side figured (the other being plain) so as to impart a design to the sheet, if desired, either depressed or raised, and that the upper table may have similar plates. But the impression upon the glass, which is so arranged for, is made in the initial operation, when the glass is first spread out and rolled over the figured face of the table, the same practically as in the Walsh, Stevens, Boughton, and Cummings patents. It is not effected by the upper table which has no part in it; the only purpose in subjecting the glass to pressure between the two tables, as declared in the patent, being to render the plate "compact, smooth, and clear." The idea that the upper table may be also figured is a clear misapprehension; the provision that it shall have face plates similar to those of the under table evidently meaning of similar mechanical construction—that is to say, in double sections, spaced apart, so as to allow of the introduction of heat retaining material. If similarity in every part was intended, why was it necessary to specially declare, as is done, that the plates should be provided with air vents, the same as those of the lower table? This was the view first taken by the defendants' expert; and his subsequent retraction is not convincing. It is confirmed, if that be necessary, by a reference to the specifications in the American patent to the same inventor, where nothing is said about any configurations upon the reverse side of the sectional plates of the lower table, and yet there is the same provision for similarity in those of the upper. Moreover, the patent being a foreign one, if there is any ambiguity, there is no occasion to be particularly concerned with it. Hanifen v. Godshalk, 84 Fed. 649, 28 C. C. A. 507; Hanifen v. Armitage (C. C.) 117 Fed. 845.

The second Sievert (British) patent (1892) is also referred to. The object of this, however, was not to produce plate glass, prism faced or otherwise, but to cut or stamp out flat glass objects, such as letters, numbers, lenses, frames, crosses, buttons, and rings, all of which are specified. For this purpose, a plate or sheet of glass is first rolled out in the ordinary way, and then, while still in a plastic state, a second roller, armed with sharp edged fillets or rims, designed to produce the contours or outlines of the figures desired, is passed over the sheet, stamping or marking it, without cutting through; or, in place of a roller, the figures may be stamped by a descending die. Still in sheet form, the glass is then annealed, and, after having been cooled, the figures are broken out of it; or the sheet may be ground on one or both sides, and made smooth, bright, or obscure, according to the particular effect which is to be produced; and then be broken up. The forming of prisms, among other things, is spoken of; but only, like the rest, as

detached articles, for decorative purposes, and not as constituent parts of a continuous plate or sheet.

The only other reference of which mention is specially made is the Wise (British) patent (1895), which is concerned with the production of figured plate, cut or impressed with lettering or designs. With this object in view, two or more sheets of glass are rolled one upon the other, of possibly different colors, where that effect is sought to be produced, and upon the composite mass, while still in a plastic state, a platen or die, the lower surface or face of which is suitably incised, is made to descend, and cut out of, or impress upon the glass the configuration or lettering which is desired. Where two or more colors are to be shown, as, for instance, a white decoration upon a red or blue ground, the die is made to cut deep enough to expose the under sheet or sheets. It is also provided that the design may be inscribed upon the face of the table, or may be impressed on the glass by the flattening-out roller, or by a second roller following it. And it may also be arranged to have the figures cut clear through the plate, from face to face, so as to produce open work ornamentation.

It is not contended, as I understand it, that either of the patents which have been so described is a direct anticipation of those in suit. The point made is that, having regard to the prior art as thus exemplified. there was no invention in the advance made, which at the most amounted to mere mechanical adaptation, for which the case of Daylight Mfg. Co. v. American Prismatic Light Co., 142 Fed. 454, 73 C. C. A. 570, is relied on. The Cummings patent, for rolling prism plate, was the one which was there considered; the method pursued by it, as noted above, being by spreading the molten glass on a grooved table and passing a roller over it, or, as an alternative, by having the table smooth and the roller grooved circumferentially. But this, as is well pointed out, was substantially the same operation as was shown in the preceding patents to Walsh, to Stevens, and to Boughton; the only difference being in the form of the corrugations or ribs, which, instead of being V-shaped, to make prisms, were semicircular, waving, or ratchet-toothed, a purely mechanical variation, which involved no invention to devise or make, and the patent was therefore properly declared void. The discovery of Cummings was simply that rolled prism plate could be successfully annealed and cut, and thus a commercial article of that character be produced, where, from the experience with molded prism tiles, the contrary was supposed to be the case. But this correction of a wrong impression entertained by the manufacturing trade had nothing inventive in it. It was the mere development of a structural quality, which could hardly impart invention to a machine to manufacture the article, in its essential mechanism not new. No such situation, however, is presented here. As the above review of the art has shown, both apparatus and process differ materially from any which had gone before. There is nothing, for instance, in the Heidt or the Cummings patents on which to base a comparison, each being distinctly a single-step process—the glass in the one being both spread and pressed by the die or plunger (there being also no attempt to make anything larger than a tile); and, in the other, both the spreading and the pressing being done, at one and the same time, by

the roller. In the Miller also, so far as the rolling and molding are concerned, the operation is single; the subsequent pressure of the glass between the upper and the lower table being simply to compact and smooth it, although it may possibly also have the effect (unsuggested) of setting or bringing out the figure. And while in the Sievert and the Wise there is the two step, or divided process, the plate being first rolled and then the desired configurations impressed upon it, yet in each of these the second is distinctly and intendedly a cutting and not a molding operation, nor is it, as in the patents in suit, accompanied with compression, with which, indeed, it does not comport.

These considerations serve also to suggest the distinctions upon which the inventive novelty of the present patents may be properly claimed. No doubt, as in many another case, old devices and methods have been made use of, but in a new and hitherto unrelated way, and with new and most important and useful results. So that, while it may not have been old to flatten out a plate by means of a roller or descending press, and there may not seem to be anything especially novel or inventive in molding prisms, any more than any other configurations, on the surface of the glass, this does not, after all, state the whole case. It is to be remembered that, in the manufacture of prism plate, two things have to be contended with and provided for upon which success depends: first, that perfect prisms in transverse parallel ribs or ridges shall be formed, which are of sharp and well-defined outline, and of the desired prominence or depth; and, second, that this shall be accomplished over an extended surface, without lateral or structural strain, so as to produce a plate that can be annealed and cut. This had been regarded as a most difficult, if not an impossible, problem which had been hitherto only partially solved. Cummings did much by establishing that, contrary to the accepted idea, rolled prism plate could be successfully annealed. But it remained to Ripley and Wadsworth, in the patents under discussion, to present a complete solution, by combining and adapting the rolling and the molding processes, first producing the sheet or plate, and then impressing it with prismatic ridges, under hydraulic force, so that every part of the die, in the words of the patent, should make "actual pressing contact with the glass beneath." For reasons already given, this pressing is clearly to be distinguished from a cutting or piercing of the glass, such as appears in other methods noticed above; and, accompanied as it is by a forcible vertical displacement of the material, it constitutes something more than the ordinary molding, having really the compressing effect of a die, essential to the formation of sharp and well-defined prism angles, but without spread or strain. Combined with the preceding rolling out of the plate, by which the completed article is turned out in a single, two-step operation, it has made possible a most valuable commercial product, which is in some respects new of its kind. The method of making it, as well as the apparatus by which this is carried out, must, therefore, be regarded as both novel and disclosing invention; and the patents which cover them must be sustained.

Not so, however, with regard to the third patent, for the manufactured article or resultant product. Notwithstanding what has just been said, Ripley and Wadsworth were not the first to make prism

plate. It is Cummings, if any one, who is entitled to credit for that, which is not affected by the fact that his patent was not good. It is true that his plate had defects; the prisms not being so sharp and clean cut as they should be, and there being a limit to their prominence or depth, and neither, as it seems, could the plate be polished or ground. All of this detracted from its value and is remedied in the complainants' glass, which tells, no doubt, in the market, both with regard to its acceptability and price. But we are not to be carried away by this result. The difference is one of quality or degree, and not of kind. In structure, as in intended use, the plate is the same, whether made by the one process or the other. In fact, the only distinction between them is that this is the case, and the superiority which thereby ensues. A new article, in other words, was not created by the process in question, whatever be the favorable view of the trade, but merely an old one perfected and brought out, which is not enough. Kahn v. Starrells (C. C.) 131 Fed. 464; Id., 135 Fed. 532, 68 C. C. A. 82. As to the product patent therefore, the bill must be dismissed.

The question of infringement remains, and as to the machine patent, at least, is not difficult. In the mechanism employed by the defendants the glass in plastic state is first spread by a roller, and immediately following it is acted upon by a succession of prism-faced sectional dies, which are forced downwards, against the action of retracting springs, by a traveling shoe or cam passing over their upper ends. Dies enough are provided to cover the whole sheet, and, as they descend in rotation, parallel prism ribs are impressed upon its surface, until the whole, in sectional areas, has been progressively operated upon. This, to a certain extent, is a modification of the Shuman (1901) patent, the idea of which was to spread the glass and form the prisms, at one and the same time, the sectional dies, without anything more being utilized to both spread and impress the sheet. This method was devised by Shuman after his attention had been called to the prism plate manufactured by the Ripley and Wadsworth process, and with knowledge of the patents which they had taken out. It was an attempt, as he says, to simplify it; but it did not work, and had to be abandoned. A roller to spread the glass was then put ahead of the dies, the rest of the mechanism being retained, and the process divided up, as in the patents in suit, with corresponding success. The first claim of the machine patent is the one that is charged to be infringed (the fourth, which was at first relied on, having been withdrawn); that is to say:

"1. Apparatus for making prism-glass comprising a spreading-table, on which the glass is rolled, a roll, and an upper pressing-die having prism-form shaping cavities, said cavities being provided with air-vents, and means arranged to force said spreading-table and die towards one another said die being shaped to make pressing-contact of the surface of the said cavities with the entire surface of the glass beneath them; substantially as described."

The defendants claim to escape infringement because their dies, as it is said, do not make pressing contact with the entire surface of the glass beneath, within the meaning of these terms. The contact which is contemplated and called for, according to this, is one which extends over the entire surface of the sheet, and not a contact by sections, as in the case of the defendants' dies; or, otherwise put, the die must be

one integral, flat piece, large enough to reform by a single impression the surface of the whole plate. But this construction is forced. No doubt there must be complete contact between the die and the glass over the entire area sought to be affected by the particular impression which, at any one time, is being made. But there is nothing which requires that this should be coextensive with the whole sheet, or that is not fulfilled in principle as in terms by a molding of the sheet, by successive contacts, with a die which only covers a section at a time. That is the action of the defendants' grouped sectional dies, which perform substantially the same function as that of the complainants' single die; the result, when the operation is complete, being also the same, and affected in essentially the same way, which is not to be obscured by the fact that it is divided up, and the sections successively applied, a familiar expedient of infringers, to get the benefit of the principle, while possibly avoiding the letter.

It is contended, however, that the defendants have no air vents for the cavities of their dies such as are called for by the claim. These are made a feature of the device, and cannot be ignored, however unimportant they may seem. And, if the complainants are confined to those which are shown in the drawings, the defendants, not making use of that particular form, do not offend. But no such limitation is imposed. On the contrary, it is expressly declared in the specifications that, where the prism forming cavities extend across the face of the die, the end of each cavity may be left open to provide the needed vent. This is the exact construction adopted by the defendants, which none the less constitutes a vent within the terms of the claim—sustaining the infringement charged—because, by the arrangement, the air escapes naturally without any specially provided port.

Another distinction which is suggested is that the cam by which the defendants' dies are depressed is indented at the center, so as to allow each die to slightly rise at that point, as it is reached, being forced back into contact with the glass, as the cam proceeds, until released at the other end. This, as it is said, is a desirable as well as a distinguishing feature, insuring, as it does, that the glass shall not stick. But, whether this be so or not, it amounts at the most to a mere variation or improvement, making no substantial change in the operation, the essentials of which remain the same.

The operation of the defendants' apparatus is also claimed to be different, because a wave of glass precedes the dies across the sheet, which is not thus in plate form, as it is said, when the prisms are impressed. But this loses sight of the effect of the completed operation, which, regardless of the wave, by the separate action of roller and dies, produces in the end a properly constituted pressed prism plate.

Nor are the defendants much more fortunate in avoiding the method patent. There are four claims here, all of which are relied upon, as follows:

"1. The herein-described method of making prism-plates of large area in two operations, consisting in producing a substantially flat sheet of glass, and then forming prisms on the surface of the sheet by pressure exerted in a direction transverse to the plane of the sheet upon the entire cross-section of the portion to be shaped into prisms; substantially as described.

"2. In the manufacture of prism-plates, first spreading the glass into a

sheet of at least the dimensions of the completed article while the same is freely plastic, whereby change in the relation of the particles is unaccompanied by increased tension of any part of the mass, and then (leaving the glass sheet of the dimensions so constituted and without further spreading the glass) forming on the surface of the sheet while still plastic prisms over the entire portion to be shaped and confining the prisms until the glass thereof has set; substantially as described.

"3. The herein-described method of making prism-plates of large area in two operations, consisting in producing a substantially flat sheet of glass, and then forming prisms on the surface of the sheet by pressure exerted in a direction transverse to the plane of the sheet, upon the entire cross-section of the portion to be shaped. and confining the prisms until the glass has set; substantially as described.

"4. The herein-described method of making prism-plates in two operations, which consists in producing a substantially flat sheet of glass, and then while it is still plastic applying pressure to the surface thereof in a direction transverse to the plane of the sheet and upon the entire surface to be shaped into prisms, segregating thereby portions of the plastic glass, and displacing the same upwardly into ridges of prism form, whereby the prism-plate is formed without unequal straining of the glass; substantially as described."

The point is made, as to this, the same as the apparatus patent, that there has to be a contact of the die, at one and the same time, over the entire surface of the plate. But even less, indeed, than there, is there anything upon which to predicate this. The most that is required in any of the claims is that prisms shall be formed "by pressure exerted in a direction transverse to the plane of the sheet upon the entire cross-section of the portion" to be shaped; and this is clearly satisfied as well by impressing the surface with prisms in successive sections as by subjecting it to the action of a single die, operating upon the whole.

It is said, however, that the complainants' process is not only a divided, but an interrupted, one, while that of the defendants is continuous. By the one as it is pointed out the glass is first spread by the roller, "and then," in the words of the several claims—that is to say, after this part of the operation is over, and not until then—are the prisms to be formed on the surface. A distinct interval, in other words, is to occur, according to this, the object of which, as shown by the specifications, is to let the glass set or cool, and so "retain the prism-pattern which is formed upon it, without losing it by the running together of the hot glass, or without burning the sharp projecting portion of the figured surface of the die." But, with an exception to be presently noted, this is not the construction to be given to the claims. Undoubtedly there is an intended division of the operation; that, indeed, being its real virtue. But so is there in that of the defendants; which is essentially the same; the glass being first spread by the roller, and then pressed into prisms by the following dies. There may be no great interval between the two parts of the operation, nor much cooling or setting of the glass. But there is enough to be appreciable, and to make the operation a divided one, appropriating the principle of the invention, as is clearly shown by comparison with the original arrangement devised by Shuman, by which the glass was to be both spread and pressed by means of the dies, without more. Whether structural strain was found to result, as in the Heidt, or sharply-defined prism angles could not be formed, as in the Cummings, this was aban-

doned, as we have seen, and the operation split up, two parts being made of it, the one devoted strictly to rolling out the sheet, and the other to impressing prisms thereon. But this is the Ripley and Wadsworth method, pure and simple, the essential feature of which consists not so much in having a cooling interval between the two steps of the process (although that may not be without its advantages) as in the separation of them, so as to avoid undue tension or strain, the formation of the prisms not being undertaken, until after the glass has been spread; there being nothing, however, to require that the spreading shall be complete over the entire sheet before the prism making is begun.

The same cannot be said, however, of the second claim, as to which as intimated an exception must be made. The provision there is express, for "first spreading the glass into a sheet of at least the dimensions of the completed article * * * and then (leaving the glass sheet of the dimensions so constituted and without further spreading the glass) forming on the surface of the sheet, while still plastic, prisms over the entire portion to be shaped." Here is apparently a distinct and intentional cleavage between the two steps of the process, possibly designed to carry out the suggestion for a cooling interval made in the specifications, and to cover a modification in which that was found, which cannot be disregarded or put aside. Not but that considerable of an argument can be made that nothing more was intended than appears in the other claims. But that is not the natural or obvious construction; and, the claims having to be differentiated in order to avoid duplication, it may be conveniently done this way. At all events, the burden is on the complainants to establish infringement which is not made out, if it is uncertain as to what is the true reading of the claim.

Let a decree be drawn sustaining the bill, and granting the relief prayed for, except as to the manufactured article and the second claim of the method patent, with costs.