## HANIFEN v. E. H. GODSHALK CO. et al.

### (Circuit Court, E. D. Pennsylvania. December 16, 1896.)

1. PATENTS—DATE OF INVENTION—INVENTION ABROAD.
    As against an infringer, the owner of a patent may, to avoid alleged anticipation or prior use, carry back the invention by proving the actual date thereof, though the same was made in a foreign country.

2. SAME.
    In the case of two patents, each for a knitted fabric as an article of manufacture, one for an improvement in plush goods, and the other for "Astrakhan Cloth" (articles of distinct species), the former would not be an anticipation of the latter, even if the only change necessary to produce the Astrakhan cloth was the substitution of one kind of yarn for another.

### On Rehearing.

3. SAME—KNITTED FABRICS—ASTRAKHAN CLOTH.
    The Bywater patent, No. 374,888, for an improvement in knitted fabrics, whereby Astrakhan cloth is produced, held anticipated by the Booth British patent, No. 756, of 1881.

This was a suit by John E. Hanifen, trading as John E. Hanifen & Co., against the E. H. Godshalk Company and Edward H. Godshalk, for alleged infringement of a patent for an improvement in knitted fabrics.

Joseph C. Fraley and Wm. P. Preble, for complainant.

Strawbridge & Taylor, for defendants.

DALLAS, Circuit Judge. The bill in this case prays the usual relief for the alleged infringement by the defendants of patent No. 374,-888, dated December 13, 1887, issued to Levi Bywater, assignor to the complainant, for an improvement in knitted fabrics. The claim sued upon is as follows:

"(2) A knitted fabric composed of face and back yarns of different materials, the face yarn being looped at regular intervals and on alternate stitches of adjacent rows of the back yarn, and being matted and curly, and having a smooth back, whereby the said fabric has the appearance of looped or Astrakhan cloth, as described."

The only defenses which need be discussed are anticipation and prior use. The application was filed on December 22, 1883, but the plaintiff claims that the date of actual invention has been carried back to November, 1880. The defendants, on the other hand, insist, as matter of law, that, inasmuch as the date set up is of invention made in England, it would not, even if established, be material; and also, as matter of fact, that the invention of the patent has not been shown

to have been made at any place before the time at which the application for the patent was filed.

There is no statute which warrants the suggested distinction respecting inventions made abroad and those made in the United States. Section 4886 of the Revised Statutes enacts that "any person who has invented or discovered any new and useful art, * * * not known * * * before his invention or discovery thereof, * * * may * * * obtain a patent therefor." The right to a patent is thus made to depend, as to the point under discussion, wholly upon the time of invention as related to then-existing knowledge, etc., and nothing whatever is said with respect to the place of invention. The learned counsel of the defendants have argued that it would be incongruous to permit a public use and sale abroad, more than two years before application, to save a patent by establishing date of invention, when such use and sale, if it had occurred in this country, would have operated to defeat the patent. A sufficient answer to this argument would be that the supposed incongruity is one which the lawmaking power has seen fit to create, but a more satisfactory one is that no dilemma whatever is really presented. There is no inconsistency between the substantive law which provides that a foreign public use shall not, in itself, invalidate a patent, though a similar use and sale here would do so, and the law of evidence under which such foreign use and sale may be shown to fix date of invention. The same evidence which for one purpose would be inadmissible may for another be competent. An offer to prove public use and sale in a foreign country more than two years before the filing of the application would, if made to invalidate a patent, be manifestly irrelevant, for the reason that it could not have that effect; but a like offer, if made to show date of invention, would, quite as manifestly, be relevant, because it might, at least, tend to establish it. If there is anything in this state of the law which is extraordinary, I fail to perceive it. Several decisions of the patent office, extending from 1872 to 1888, have been examined. They show a consistent view of the law to have been there adopted and established, from which I certainly would not dissent without much hesitation and very full consideration. But those decisions do not relate to the precise question which is now before the court, and will not be affected by the conclusion which I have reached respecting it. They were all enunciated in interference proceedings, and the principle upon which they all rest is well stated in that one of them which is first cited below, thus:

"The distinction recognized by the law between an invention made in a foreign country and one made in the United States is this: The single fact that the invention was previously made in the United States, whether by a citizen or a foreigner, is a bar to the grant of a patent to any subsequent inventor, whether such subsequent inventor is a citizen or a foreigner, and whether he made the invention in the United States or in a foreign country; but the single fact that the invention was previously made in a foreign country, whether by a citizen of the United States or a foreigner, is no bar to the grant of a patent to a subsequent inventor, whether such subsequent inventor is a citizen or a foreigner, and whether he made the invention in a foreign country or in the United States."

In other words, what has been held is that the single fact of previous invention in the United States is but that mere previous inven-

tion in a foreign country—i. e. without patent or printed publication—is not a bar to the grant of a patent; but it has not been held that, where an uncontested application is founded upon invention abroad, the grant of a patent is invalid if a sufficiently remote date of invention cannot be established without acceptance of the time when the invention had been made in a foreign country; and it seems to me that, while the actual rulings of the patent office conform to the law, they could not, without conflicting with it, be made applicable to the present subject. They are supported by the terms of section 4923, but the inference now sought to be deduced from them is quite as plainly inhibited by section 4886. Thomas v. Reese, 17 O. G. 195; Hovey v. Hupland, 2 O. G. 493; Chambers v. Duncan, 10 O. G. 787; Lauder v. Crowell, 16 O. G. 405; Rumpff v. Kohler, 23 O. G. 1832; Boulton v. Illingworth, 43 O. G. 508.

I know of no case in which this point can be said to have been judicially determined. I believe it was not argued, and am sure it was not investigated by the court, in Uhlman v. Brewing Co., 53 Fed. 485. That case seems to have been presented as one of conflict between two patents, and in such manner as to direct attention only to the inquiry whether the Stockheim or the Klein invention "was first known or used in this country." It appears to have been assumed that the inquiry stated was in that case the material one, and the particular question which is now for solution was, apparently, not then discussed, and certainly was not considered. Reference has been made to several opinions delivered by Judge Coxe, but which, when read together and in connection with the observations made upon them by the court of appeals for the Second circuit, do not, I think, indicate that the view of the law which I have expressed is at variance with that which is entertained in that jurisdiction.

In Electrical Accumulator Co. v. Julien Electric Co., 38 Fed. 117–128, Judge Coxe said:

"The evidence of prior invention by Charles F. Brush is now to be considered. In determining this question, Faure, being at that time a citizen of France, is not permitted to claim the invention earlier than the date of his French patent, which was October 20, 1880," etc.

The learned judge did not state the ground on which he rested this proposition, and cited no authority for its support. The gist of it seems to be that Faure's French citizenship (not the place of invention) precluded him from claiming his invention as of a date earlier than that of his French patent; but, in the absence of explanation, I infer that it was section 4923, and not section 4886, which was in contemplation, and that what was really meant is that, under section 4923, the patent of Brush should not be held to be void on account of prior invention in a foreign country, "if it had not been patented," etc. When the same subject-matter was again in litigation (Brush Electric Co. v. Electrical Accumulator Co., 47 Fed. 48–51), the same learned judge referred to the fact that Brush was a patentee who had produced an invention of real merit, and whom, therefore, it was the policy of the law to reward, and the duty of the courts to be sedulous to protect; and, upon appeal, the court of appeals for the Second circuit (Electrical Accumulator Co.

v. Brush Electric Co., 2 C. C. A. 682, 52 Fed. 130–134), speaking of Faure, said:

"His French patent was dated October 20, 1880, and, inasmuch as he was a citizen of France, he is not permitted to claim his invention before that date, as against a citizen of the United States, who, being also an original inventor, subsequently received a patent for his own invention in this country."

Thus it appears that the circuit court and the court of appeals both regarded as an important circumstance the fact that Brush was an original inventor and a patentee; and there is no difficulty in reconciling the ruling that, as against such a party, prior invention abroad, without patent or publication, is of no consequence (section 4923), with the position that as against one who is neither an inventor nor a patentee, but an infringer, the owner of a patent may show that the invention was made, though in a foreign country, at a time when it was not known or used in this country, nor patented or described in any printed publication in this or any foreign country (section 4886).

I have reached the conclusion that it was competent for the complainant to prove the actual date with reference to invention made in England; but I cannot find that he has succeeded in doing so with the requisite degree of certainty. The evidence as to what was really done in 1880–1881 is not entirely satisfactory; and it utterly fails to establish the essential fact that the precise and completed invention which was patented in this country had been, at any place, conceived by Bywater before the filing of the application. The fabric which was made in England differs materially from that of the claim, and therefore cannot be accorded any significance. This finding requires the admission of all the patents which have been set up as anticipatory; but of these only two are particularly discussed in the defendants' brief, and to them only it seems necessary to refer.

The Kent and Leeson patent is for a knitted fabric. Its specification presents one mode in which that particular fabric may be produced, and it is contended that by that mode Astrakhan cloth also can be made, by merely substituting one sort of yarn for another, to constitute what in the Bywater material is the face, and in that of Kent and Leeson is the back. This contention is not supported. I do not overlook the fact that such a feat seemed to be performed during the argument, but that Astrakhan cloth could not be commercially so made, and that the defendants themselves do not so make it, has, I think, been made evident. But, even if the only difference in the two methods of production consisted in the use of a single different yarn, yet, in my opinion, the two patents would not conflict, inasmuch as neither of them is for a process, but each is for an article of manufacture, and the articles themselves are not the same, but are of distinct species. The invention of Kent and Leeson was of an improvement in knitted plush goods, which were old. These, no doubt, they improved; but, in doing so, they did not even suggest Astrakhan cloth, and if they had made it, instead of plush, they would neither have attained their object, nor have entitled themselves to the particular patent which they obtained. I fail to

find in that patent any intimation that they had conceived the By-water invention, and it certainly does not disclose it. In their appearance, in their uses, and in trade contemplation, the two articles are absolutely distinct. It may be conceded that the employment of a yarn not before used for the same purpose, in making an old fabric, would not amount to invention; but here a new fabric was created, and that it is which was patentable and was patented. The very ingenious argument which has been submitted for the defendants respecting this Kent and Leeson patent is substantially epitomized in one of the propositions which it affirms, viz.: "Knitted fabrics had previously been manufactured by providing them with loops of one kind of yarn, and it cannot be said to constitute invention to provide said fabrics with loops formed of a different kind of yarn." Waiving discussion of any question as to the accuracy of the statement of facts embodied in this proposition, it is enough to say of it that it is fallacious as applied to this case, because it is not propounded in the terms of the claim. If it could be truly said that knitted Astrakhan cloth had previously been made in all respects as Bywater made it, except that, in part, it had been composed of a different yarn, it might, as I have said, be conceded that his patent was erroneously issued; but that the fact, if admitted, that other knitted fabrics had been so made, would defeat it, I cannot agree.

Respecting the British patent No. 756, of February 22, 1881, to James Booth, the defendants have adduced testimony that, by following its instructions, Astrakhan cloth can be made, and their expert has said that he finds that a fabric is disclosed by it which is substantially like that referred to in the claim in suit. This evidence, if accepted without scrutiny, would, of course, be sufficient for the defendants' purpose; but when carefully scanned, and tested in accordance with well-established principles, it cannot be regarded as adequate for the overthrow of a patent. The practical knitters who have said that they have succeeded in manufacturing Astrakhan cloth under the Booth patent evidently intended to succeed if they could find it possible to do so. They were familiar, not only with the art as it had pre-existed, but also with the fabric of Bywater, and with the method suggested by him for its production; and I am persuaded that they could not have made it but for knowledge derived, mediately or immediately, from his patent. That the Booth patent did not supply all the requisite information, and did not show the Astrakhan fabric, seems to me to be perfectly plain. In fact, it shows no fabric whatever, and it contains no language which defines or describes Astrakhan cloth. Some terms it uses which are also used by Bywater, but the differences in their language are distinguishing, and, as a whole, they designate and refer to wholly different things. The "ornamental appearance" produced by Booth is not the Astrakhan-like appearance created by Bywater; and that Booth did not suppose it to be so is evident upon the face of his patent, and from the fact that neither he nor any one else had ever made any material having the curly and matted features which pertain to Astrakhan cloth prior to the application of Bywater.

It cannot be said that either Kent and Leeson or Booth described the peculiar fabric in question so as to enable those skilled in the art to make it, for neither of them described it at all, and that they may have come near doing so is not enough. Knitted Astrakhan was created by Bywater, and this he accomplished, not by merely applying the skill of the knitter to effect a change in either of their products, but by the exercise of his own inventive faculty.

The defense of prior use or sale, within the United States, more than two years prior to application, has not been maintained. The effort to support it substantially rests upon the evidence introduced by the defendants respecting the importation of certain samples of "Kyle" by H. Herman Sternbach & Co., of New York, in May, 1881. There is at least room for very grave doubt as to whether these "samples" should be regarded as Astrakhan cloth, but it is not necessary to resolve that doubt, for, whatever they may have been, I am unable to find that they passed into public use or were put on sale. The fact that they were forwarded from the New York customhouse to Sternbach & Co. was a relevant one, as also was the evidence to show the usage of that firm to exhibit goods of that character promptly. But evidence which is unquestionably admissible may yet be utterly insufficient to alone establish either side of the issue, and such is the case in the present instance. The burden of proof was on the defendants, and the degree of proof required of them was not attained by submitting evidence from which the existence of the fact which it was intended to establish might, with doubt and hesitancy, be inferred. The proof of prior use must be "clear, satisfactory, and beyond a reasonable doubt." Case of the Barbed-Wire Patent, 143 U. S. 284, 12 Sup. Ct. 443, 450. The proof in this case is not of that character. Decree for complainant.

## On Motion for Rehearing.

(December 28, 1896.)

This case having been heard upon pleadings and proofs, I filed an opinion on December 16, 1896, and directed a decree to be prepared in favor of the complainant. The defendants immediately gave notice of their intention to move for a rehearing, and for a reopening of the case, with leave to them to adduce additional evidence. Upon December 23, 1896, and before decree entered, that motion was duly presented and argued. No adequate ground has been shown or sufficient reason advanced for permitting the introduction of further evidence. All that is known to the defendants now they knew during the taking of the proofs, and what they propose to offer seems to be cumulative merely. Upon the evidence as it stands, they deliberately rested their case; and the fact that, if they had foreseen that it would be regarded insufficient, they could and would then have made additions to it, does not entitle them to do so now; and a due regard for the right of the complainant to have this litigation regularly proceeded with and reasonably terminated forbids, under the circumstances, the granting of the retrogressive order which is asked for. Upon the evidence already taken, however, I will further

consider the single question upon which a rehearing is sought, but only to the extent and in the manner following:

I will be pleased to be further advised upon two points, namely: (1) Does the Booth patent, on its face, disclose the invention of the patent in suit? And (2) did Booth, or any one else, prior to the application of Bywater, make any material which, in the sense of the patent law, is the same as the Bywater patented fabric? I do not desire any additional aid from counsel, except upon the points stated; and, in view of the very full discussion of which I already have had the benefit, I do not purpose to hear any further oral argument. What is called for, and will be considered, is a condensed brief on each side, directing attention specifically to the evidence bearing upon the above questions, and the positions and propositions of counsel with respect thereto. No affidavits will be received. Eight days are allowed for filing defendants' brief, and for service of two copies thereof on complainant's counsel; and, for filing and like service of complainant's brief, eight days from time of service of defendants' brief are allowed. Subject to the limitation and restrictions imposed by this memorandum, the defendants' motion for a reargument is granted.

## On Rehearing.
### (January 19, 1897.)

An opinion was filed in this case on December 16, 1896. Thereupon the defendants asked for a rehearing upon the issue of anticipation as affected by the Booth British patent of February 22, 1881, and on December 28, 1896, a reargument was allowed on two questions, namely: (1) Does the Booth patent, on its face, disclose the invention of the patent in suit? (2) Did Booth or any one else, prior to the application of Bywater, make any material which, in the sense of the patent law, was the same as the Bywater patented fabric?

The second of these questions was, of course, not supposed to be important, except as the answer to it might throw some light upon the first. In my former consideration of the subject, my judgment was strongly influenced by the conviction then impressed upon my mind respecting this auxiliary inquiry. I believed that no true knitted Astrakhan had ever been made prior to the application for the patent in suit, and mainly upon that ground was led to think that the defendants' expert and practical knitters must be at fault in supposing that the Bywater fabric was disclosed by the Booth patent. Now, however, upon a careful review of the whole matter, aided by the very thorough additional briefs which have been submitted, I have become convinced that my original conclusion was erroneous. It is not necessary to pursue here the elaborate arguments of counsel. No useful purpose would be subserved by doing so. It is sufficient to say that I am satisfied that the uncontradicted evidence of the defendants' witnesses was not correctly dealt with in my disposition of this case in the first instance, because, as I now view the first of the questions which have been reargued, it is one which can safely be determined only upon the testimony of those

78 F.—52

familiar with the art. By adducing such testimony, the defendants discharged themselves of the burden of proof, which at first rested upon them. They thereby established, at least prima facie, the identity of the fabric disclosed by the Booth patent with that of the patent sued on; and, this being so, the absence of any answering evidence on the part of the plaintiff must be regarded as decisive against him. The direction for a decree for the complainant is vacated, and the bill is dismissed, with costs.