HANIFEN v. PRICE et al.

(Circuit Court, S. D. New York. August 4, 1899.)

1. PATENTS—VALIDITY—INVENTION IN FOREIGN COUNTRY.
   One who has made an invention in a foreign country, and has obtained a patent in this country after the introduction of the article into commercial use, but before the granting of any foreign patent or the description of the invention in any publication, may, for the purpose of overcoming the defense of prior use in this country, carry back the date of his invention to the actual time of making such invention in the foreign country.

2. SAME—KNITTED FABRICS—ASTRAKHAN CLOTH.
   The Bywater patent, No. 374,888, for improvements in knitted fabrics, whereby a cloth is produced having the appearance of Astrakhan cloth, *held* not anticipated by the prior Booth British patent, No. 756, of 1881, nor shown to be invalidated by abandonment or prior use in this country; and also *held* infringed. Hanifen v. E. H. Godshalk Co., 28 C. C. A. 507, 84 Fed. 649, followed.

This was a suit in equity by John E. Hanifen, trading as John E. Hanifen & Co., against Edward A. Price, Francis H. Inloes, and Petera B. Worrall, trading as Fred Butterfield & Co., for alleged infringement of a patent for a knitted fabric.

W. P. Preble, Jr., for complainant.

Boardman & Boardman and Wetmore & Jenner, for defendants.

TOWNSEND, District Judge. The questions herein are presented at final hearing on a bill alleging infringement of patent No. 374,888, issued December 13, 1887, to complainant's assignor, Levi Bywater, for a knitted fabric. The inventor states as follows:

"My invention consists of a new and improved textile fabric having the face yarn thereof looped on the stitches of the back yarn, as hereinafter set forth, the said face, which is formed of mohair, worsted, or other yarn, being beat up so as to present a wavy or curly surface, and the back, which is formed of woolen or other yarn, brushed, so as to present a smooth surface, the fabric having the appearance of looped or Astrakhan cloth."

Prior to this suit, other suits for infringement of this patent were brought by this complainant in the Second and Third circuits. The suit in the Third circuit against E. H. Godshalk et al., hereafter referred to as the "Godshalk Case," was heard on bill, answer, and proofs by Judge Dallas. The defenses therein interposed were: (1) Anticipation; (2) public use and sale in the United States more than two years prior to the application; (3) abandonment; (4) noninfringement. The learned judge, upon an elaborate investigation and discussion, ordered a decree in favor of complainant on the ground that the patent was valid, and had been infringed, and that the proofs of prior use or sale and of abandonment were insufficient. Thereafter, upon a rehearing and reargument, Judge Dallas reconsidered his conclusions upon the issue of anticipation, and dismissed the bill on the ground that the patent in suit was anticipated by the British patent to James Booth. 78 Fed. 811. An appeal from this decision was heard in the circuit court of appeals by Mr. Justice Shiras and Judges Acheson and Butler. A majority of said court reversed the decree

of the circuit court, Judge Butler dissenting.    28 C. C. A. 507, 84 Fed. 651.    In a prior suit in this circuit against one Vietor considerable testimony was taken.    A motion for a preliminary injunction was denied by Judge Lacombe, and thereafter all the pending cases were settled.    Much of the testimony taken in the Godshalk and Vietor Cases has been stipulated into the present case, and additional testimony has been taken on both sides.    It is unnecessary, in this opinion, to discuss infringement, which is not denied, or abandonment, which is not proved.    The only claim in suit is the second, which is as follows:

"A knitted fabric composed of face and back yarns of different materials, the face yarn being looped at regular intervals and on alternate stitches of adjacent rows of the back yarn, and being matted and curly, and having a smooth back, whereby the said fabric has the appearance of looped or Astrakhan cloth, as described."

The fact that the learned judge who originally heard the Godshalk Case allowed a reargument and thereafter reversed his first opinion, and that one of the judges in the court of appeals dissented from the opinion of a majority of the court in reversing Judge Dallas, shows that the question of patentable novelty presented by the Godshalk record was a very close one.    It is not claimed that Bywater, the patentee of the patent in suit, invented either a new machine, or a new art of knitting, or Astrakhan cloth.    Counsel for complainant says:

"We find Bywater does not claim any novel mechanism, or any novel process, but does claim to be the first to make a new and improved textile fabric by such a wise choice of parts and yarns as to produce a knitted fabric which has the appearance of looped or Astrakhan cloth.    What a knitter had to do to carry out the Bywater idea was to buy a piece of looped or Astrakhan cloth, or, lacking that, real Astrakhan, and, with that before him, set up his circular knitting frame with a view to having the mohair or worsted yarn which forms the face show a wavy or curly appearance such as the knitter found on the face of the Astrakhan cloth or the Astrakhan skin.    This had never been done before."

These statements are denied, and it is further contended that, even if they were true, such changes would be immaterial, because the selection of a well-known thread to produce a well-known woven Astrakhan effect on a well-known knitting machine could not involve invention.    The prior Booth patent and the Bywater patent in suit are each for an improvement in fabrics knitted in each case on the same kind of machine, and by the use of the same wool yarn for the back of the fabric.    Bywater describes his face yarn as "mohair, worsted, or other yarn."    Booth's face yarn is described as "worsted, or long fiber yarn, which will not felt with back or body."    Bywater produces a looped material which has "the appearance of looped or Astrakhan cloth."    Booth produces a material which projects from the "fabric in the form of loops, thereby producing a very ornamental appearance."    Each material is afterwards fulled and dyed and finished in the same way.    The Booth patent antedated the patent in suit some six years, and the Booth fabrics had been on the market for two years before Bywater came to this country, in 1883.    Coarse,

wiry, curly yarn, like mohair or luster, had been used for various purposes, including the making of woven Astrakhan cloth, prior to Bywater. As complainant's counsel says:

"If the second claim of the patent in suit had left out the words 'matted and curly' and 'Astrakhan,' the claim would have set forth nothing except what was common in large varieties of knitted fabrics which had been made on circular knitting machines for a great many years. It is only the use of those words which makes the Bywater patent differ from all older patents."

The question now to be considered is whether, upon the newly-introduced evidence, the court of appeals would have reached a different conclusion as to the anticipation of Bywater by Booth. Judge Dallas, in the case against Godshalk, stated his conclusions as follows:

"The 'ornamental appearance' produced by Booth is not the Astrakhan-like appearance created by Bywater; and that Booth did not suppose it to be so is evident upon the face of his patent, and from the fact that neither he nor any one else had ever made any material having the curly and matted features which pertain to Astrakhan cloth prior to the application of Bywater. It cannot be said that either Kent and Leeson or Booth described the peculiar fabric in question so as to enable those skilled in the art to make it, for neither of them described it at all, and that they may have come near doing so is not enough. Knitted Astrakhan was created by Bywater, and this he accomplished, not by merely applying the skill ·of the knitter to effect a change in either of their products, but by the exercise of his own inventive faculty."

After rehearing he stated that this conclusion was erroneous, because the question whether the Booth patent on its face disclosed the Bywater invention was "one which can safely be determined only upon the testimony of those familiar with the art," and that the uncontradicted expert testimony of the defendants established the identity of the fabric disclosed by the Booth patent with that of the patent sued on. The following citation from the language of Judge Acheson, delivering the opinion of the court of appeals, shows the grounds on which that court reversed the decision of Judge Dallas:

"The contrary conclusion, which the able judge of the court below reached. was based upon the effect which he felt constrained to give to the testimony of the defendants' professional expert, their foreman, and two knitters. We have examined that testimony with the utmost care, and we are obliged to say that, in our opinion, it does not justify a decree adverse to the patent in suit. This testimony strikes us as very meager. It consists of little more than the bare opinions of the witnesses that Booth's patent discloses the Bywater fabric. The witnesses really give no reason for their conclusions. No detailed analysis of Booth's specifications is made by any of them. None of them pretend that any of the terms employed in Booth's patent require explanation by an expert. No such elucidation is attempted by any of them. These witnesses called the Booth fabric 'Astrakhan cloth,' and say that, by following the directions of Booth's patent, without more, Astrakhan cloth can be produced; and one of them states that he has done this. This is the whole substance of their testimony. Ought it to be controlling? We think not. Testifying in 1896, it was impossible for these witnesses to devest their minds of their then knowledge respecting the Bywater fabric and the mode of its production, even if they had been unbiased. But what a willing witness in 1896 might read into the Booth patent is no fair test. The true question is, what did that patent disclose to the public in 1881? We are well satisfied that the expert testimony of the defendants' witnesses furnishes no safe aid in the solution of that question. The Booth patent speaks for itself, and its meaning is to be determined by the court."

Defendants' additional testimony on this point consists of the Bywater deposition,—which counsel states was cited and referred to in the Godshalk Case, but which, so far as the record shows, was not before the court,—the testimony of Bywater, the patentee, and of one Lupton, and certain new testimony of Martin and Appleton, who are the defendants' professional expert and one of their knitters, respectively, referred to in the opinion of the circuit court of appeals. The substance of the testimony of Appleton and Martin in the Godshalk Case, like that of McGuire, another knitter, whose testimony for defendants in the Godshalk Case was not introduced herein, was to the effect that there was no difference between the fabric described in the Bywater patent and stockinet fabric of Kent and Leeson, except in appearance, due to the employment of a curly or crinkly wool in place of a soft, fine yarn; and that the Booth patent described the Bywater fabric; and that by following the instructions given by Booth they either could construct or had constructed cloth precisely the same as that covered by the Bywater patent, and one such piece of cloth was produced by Martin. Judge Dallas, in his opinion, states that in support of this contention "such a feat seemed to be proved during the argument." These witnesses were not cross-examined, and Judge Dallas reversed his original decision on their uncontradicted statements. The additional evidence of Martin, who, by the way, was the foreman of the defendant Godshalk, consists chiefly in the introduction of various samples alleged to have been made in accordance with the Booth and Bywater patents, in addition to the one sample produced on the former hearing,—an assertion to be hereafter referred to,—that he never used a worsted or long-fibered yarn that would not felt with the back, which, if used in accordance with the Booth patent, would fail to produce the effect of Astrakhan cloth; and a statement that in fulling and felting the specimens of the Booth and Bywater patents he followed the same process, and that he did not use a different adjustment of the wheel in making said specimens from that which he would have used if making stockinet, and that it would be impossible, by any adjustment of the wheel, to make the floats, or loose surface, so short as to prevent unfeltable worsted yarn from giving an Astrakhan appearance in making a fabric according to the Booth patent. The additional testimony of Appleton, who, as examiner, had passed favorably upon the application for the Bywater patent, is now to the effect that there is nothing new therein, and that the ordinary knitting machine is adapted to be used with yarns ordinarily employed in the production of knitted Astrakhan, and that the capacity of adjustment of such machine and its adaptability for use with different yarns was known prior to the date of the Booth patent. He also explains that fulling and felting means a certain boiling of the material in hot water with soap. Bywater, the patentee, a new witness, says that he did not get a patent in England because Booth anticipated him, and that he understood that Booth's patent was for Astrakhan. Lupton, also a new witness, testifies that by following the directions of the Booth patent he made Astrakhan in England in 1885, and that, if the manufacturer follows said direc-

tions, unless he willfully spoils the cloth, he will produce Astrakhan, and, if he is a man of good judgment, he will produce a very ornamental effect, as claimed by Booth. Much of this testimony is cumulative in its character. It is chiefly furnished by the hostile witnesses in the Godshalk Case, and is to the same effect as the positive uncontradicted testimony in the face of which the court, in said case, found that the Booth patent did not describe the Bywater invention. Much stress has been laid upon the statement of Bywater that Booth's patent stopped him from making Astrakhan. It is to be borne in mind that he is not the complainant herein. He was in the employ of the English firm of Hargrave & Nussey. It does not appear that he ever saw the Booth patent, and Nussey, his employer, says that the reason why they did not get Bywater to take out a patent was because they preferred to keep the method of manufacture secret. Lupton's testimony is no stronger than that of Martin, Osborne, and Appleton in the Godshalk Case. It is contended that the court in the Godshalk Case would not have reached a different conclusion if the new testimony for the defendants herein had stood, as did the testimony in the Godshalk Case, without cross-examination. Upon the cross-examination, however, the following facts were shown by defendants' witnesses, namely: (1) That the Booth patent does not disclose how to make knitted Astrakhan, because it fails to distinguish between those long-fibered unfelting yarns which are not curly and crinkly and yarns which are curly and crinkly, while it is clear from the whole testimony that there is a vital distinction between the two. (2) That the Booth patent failed to show that, in order to make Astrakhan, the face yarn must be put in under different conditions from those which obtained in the stockinet process, and that an adjustment of the loop was necessary in order to produce longer floats. These points are established by the cross-examination of Martin and Appleton. (3) Lupton admits that the fabric produced by following the Booth specification would not be recognized by the ordinary individual as Astrakhan. The argument of complainant that Booth, by the description in his patent of a fabric in which the yarn projected "in the form of loops, thereby producing a very ornamental appearance," did not understand or refer to any cloth which looked like Astrakhan, and that the "long-fibered yarn which will not felt" was not a curly yarn, is covered by the opinion of the court in the Godshalk Case. The new testimony is to the effect that the sole features of novelty in the Bywater patent are the use of a kind of yarn which had never before been used on a knitting machine, in new lengths or floats on one of the surfaces, either by changing the adjustment of the machine, or by accomplishing a change of tension in some other way, whereby an entirely new fabric was produced. The circuit court originally, and the court of appeals afterwards, found that these changes involved invention. The conclusion reached, with great hesitation, upon a careful review of the whole testimony, is that, in view of said findings, the new evidence is not of such a character that it would probably have caused the court to reach a different conclusion in the former case. Upon this ques-

tion, therefore, the decision of the court of appeals sustaining the validity of the patent will be followed. The opinion of the circuit court of appeals in the Godshalk Case as to the defense of prior public use or sale was as follows:

"The defense of two years' prior use and public sale in the United States rests upon the importation by H. Herrman, Sternbach & Co., at the port of New York, in May, 1881, of certain pieces of 'kyrle' cloakings. We agree, however, with the learned judge of the court below, that there is 'room for very grave doubt' whether those goods were the knitted Astrakhan of this patent; and we also concur in his view that there is a failure of satisfactory evidence to show that they passed into public use, or were put on sale. The evidence of prior use or sale did not reach the standard of certain proof required to sustain such defense."

The additional evidence shows that this invoice consisted of six pieces, and that all of said pieces were on sale, and, with one exception, were actually sold, more than two years prior to the filing of Bywater's application on December 22, 1883.

The remaining question is as to the identity of the Sternbach and Bywater fabrics. The courts in the Third circuit thought there was "room for very grave doubt" on this point. The new evidence comprises the following statements by the witness Appleton:

"A. I have examined the samples, and find that they are identical in all respects with the fabric described in the Bywater patent, and referred to in the second claim thereof, with the exception that, instead of the face and back yarn being made of different materials, they appear to be made of the same material. Q. Is there any difference in the mode of manufacture, whether the face and front [back] are the same or of different material? A. There is not; the mode of manufacture being the same in both cases."

This evidence is not sufficient to resolve the grave doubt in favor of the defendants. The small samples are scarcely sufficient to satisfactorily show their mode of construction. They do not look like Astrakhan skin, and they have not the matted and curly appearance which gives the cloth the appearance of Astrakhan cloth. Finally, inasmuch as the new evidence is that the face and back yarn "appear to be made of the same material," while the claim in suit is for a "fabric composed of face and back yarns of different materials," it does not strengthen defendants' case. The essence of the Bywater invention was that the front and back should be of different materials, in order that the back yarn might shrink, while the face yarn did not shrink. This fabric, therefore, would not disclose to the public a knowledge of the Bywater fabric.

The defendants have proved an importation by Strauss, Kupfer & Co. of Astrakhan cloth with a longer curl than the Sternbach pieces, and sales thereof in May, 1883, prior to the filing of the Bywater application, but subsequent to the invention and commercial introduction of the Bywater fabric in England. If it be assumed that this fabric differs only in degree from that of Bywater, the question is presented whether Bywater can carry the date of his invention back to what was done by him in England prior to his arrival in this country. Judge Dallas discussed this question at length, and expressed an opinion in the affirmative, but found that the evidence

was insufficient to establish the earlier invention. It appears that the precise question has never been judicially determined. In interference cases, a foreign inventor can only carry back the date of his invention in a foreign country by a patent or a publication, or, in this country, by the date of the arrival in this country of knowledge of said invention. Hurlbut v. Schillinger, 130 U. S. 456, 471, 9 Sup. Ct. 584; Brush Electric Co. v. Julien Electric Co., 41 Fed. 679; Thomas v. Reese, 17 O. G. 195; Hovey v. Hufeland, 2 O. G. 493; Landler v. Crowell, 16 O. G. 405. There is, however, a distinction between the provisions of section 4923, which provides for the protection of the patentee against proof of prior knowledge, or use of his invention without publication in a foreign country, and the general grant by section 4886 of the right to a patent to any person who has made an invention not known or used by others in this country, and nowhere patented or described in any printed publication. Section 4886 provides that "any person who has invented  *  *  *  any new  *  *  * manufacture  *  *  *  not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country before his invention thereof," etc., may obtain a patent. The natural interpretation of this language would indicate an intention to confer the benefit of the patent law upon any individual who could show a prior completed inventive conception, regardless of the place where the invention was conceived. The patent is a contract between the public and the duly diligent patentee to the effect that he shall be protected therein, provided he has furnished the consideration; that is, the original creative conception. There is no expressed limitation as to time or place of invention, or of citizenship of the inventor, so far as his rights under section 4886 are concerned. The sole question is whether or not the American public received the benefit of his invention. The provision as to the effect of a patent or description in a printed publication in a foreign country is in harmony with the theory of protection to the public, because what is not so known abroad as to be within the reach of the American public does not affect the consideration of knowledge imparted here. It is immaterial whether or not the consideration received by the American public proceeds from a foreigner to an American citizen, or whether or not it was conceived abroad or at home. If the inventor elects to give to the American people the benefit of his invention, and if he has complied with the requirements of the statute, he ought not to be deprived of its privileges under the existing law by judicial legislation. As the supreme court has said in Refrigerating Co. v. Sulzberger, 157 U. S. 37, 15 Sup. Ct. 516, citing Hadden v. Collector, 5 Wall. 107: "Where the language of the act is explicit, there is great danger in departing from the words used, to give an effect to the law which may be supposed to have been designed by the legislature." The provisions of section 4923 show the same intention to protect the rights of the American public by the provision that if it (the public) gets the benefit of an invention from one who in good faith believes himself to be the first inventor, it shall not refuse to him the grant of a patent because he was not, in fact, the first in-

ventor, provided the foreign knowledge and use were not in such form as to permit it to be known to the American public.

The arguments based upon a consideration of other sections of the statute have been so fully discussed by Judge Dallas that it is unnecessary to state them here. It is not claimed by defendants that the cases decided in the Second circuit, and referred to by Judge Dallas in his opinion, are at variance with his conclusions. I recognize the force of the contentions so clearly presented in the brief of the able counsel for defendants herein, but, after full consideration, I feel constrained to concur in the result reached by Judge Dallas. A decree may be entered for an injunction and accounting.