### HANIFEN v. PRICE et al.

(Circuit Court of Appeals, Second Circuit. May 19, 1900.)

#### No. 126.

PATENTS—INVENTION—KNITTED FABRIC.

The Bywater patent, No. 374,888, for an improved knitted fabric, having a smooth back, and a face made of mohair, worsted, or other yarn, looped, and being matted and curly, so as to give it the appearance of looped or Astrakhan cloth, is void for lack of patentable invention, in view of the prior art.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The bill in equity in this case was brought in the circuit court, for the Southern district of New York to restrain the alleged infringement of the second claim of letters patent No. 374,888, applied for December 22, 1883, and dated December 13, 1887, to Levi Bywater, for an improved knitted fabric. Upon final hearing, no question existing in regard to infringement, the patentability of the improvement was sustained ([C. C.] 96 Fed. 435); the court, regarding the decision in Hanifen v. Godshalk Co., in the Third circuit, which sustained the validity of the patent, as controlling ([C. C.] 78 Fed. 811, 28 C. C. A. 507, 84 Fed. 649, 55 U. S. App. 464). This appeal is from the interlocutory decree of the circuit court.

Edmund Wetmore, for appellants.

W. P. Preble, Jr., for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). Before the date of any of the knitted fabrics which are described in the record, there was a woven fabric used in the manufacture of ladies' wearing apparel, which was made to imitate the curled wool of the Astrakhan skin. This woven fabric had a front and back face composed of different or the same materials, the yarn of the surface being looped upon the back in the loom. Wiry, curly yarn was used for the surface. There were also knitted fabrics, made upon a stockinet machine, composed of face and back yarns of different or like materials, "in which the face yarn was looped at regular intervals,

and on alternate stitches of adjacent rows of the back yarn." The Kent & Leeson patent, dated March 9, 1875, describes such a fabric, having a clean knitted face on one side, and a plush face on the other. The British patent to Ball & Wilkins, sealed April 3, 1857, describes another double knitted fabric for fleece-lined gloves. The invention of the Bywater patent in suit was said in the specification to consist of a "textile fabric having the face yarn thereof looped on the stitches of the back yarn, as hereinafter set forth; the said face, which is formed of mohair, worsted, or other yarn, being beat up so as to present a wavy or curly surface, and the back, which is formed of woolen or other yarn, brushed so as to present a smooth surface; the fabric having the appearance of looped or Astrakhan cloth." The machine upon which the fabric is knitted is a well-known circular knitting machine, and there is nothing new in any part of the mode or process of manufacture, or in the method of the mechanical adjustment, or in the material (that is to say, yarn) of which the fabric is composed. Nothing of this sort is claimed, but it is said that the novelty of the fabric consisted in the fact that, after being finished and "beaten up" (which means whipped with a cane), it is matted and curly, and that this result was due to the new use of a coarse wiry or curly yarn, like mohair or worsted, for the face of the product; or, as the complainant's counsel described the invention, "He [Bywater] used a new thread for the face, and put it under new conditions, so that it became matted and curly"; or, to use again the language of complainant's counsel, "Bywater does not claim any novel mechanism or any novel process, but does claim to be the first to make a new and improved textile fabric by such a wise choice of parts and yarns as to produce a knitted fabric which has the appearance of looped or Astrakhan cloth."

Claim 2 is as follows:

"A knitted fabric composed of face and back yarns of different materials; the face yarn being looped at regular intervals and on alternate stitches of adjacent rows of the back yarn. and being matted and curly, and having a smooth back, whereby the said fabric has the appearance of looped or Astrakhan cloth, as described."

The sole novelty in this invention, as thus described, is that the fabric is "matted and curly"; and, if the second claim had left out those words and the word "Astrakhan," "the claim would have set forth nothing except what was common in large varieties of knitted fabrics which had been made on circular knitting machines for a great many years."

At the outset of the case, from the description of the invention, either in the language of the patentee or of the complainant, by his counsel, the question of the patentability of the alleged invention becomes prominent; and attention is therefore turned to the specification, to ascertain how the cause of the new result was described, and particularly if the novelty was attributed to a theretofore not used kind of yarn, or to an unknown method of its manipulation in the machine. All that is said about the thread of which the face is to be formed is that it consists of mohair, worsted, or other yarn, and that

the back is a woolen back, and after the knitted fabric has been completed the face is beat up in the ordinary manner, "whereby the loops are matted or curled, so that the fabric has a rough, curly, or wavy surface." Nothing is said about a new mode of adjustment of the machine. It is insisted, however, that the knitter would know, as a matter of course, if the result was to be Astrakhan, that a curly yarn and long loops were to be used. This is undoubtedly true, and, being true, it suggests an invention of simple character.

Bywater was an English knitter, an employé of Hargreave & Nussey, of Leeds, England, stockinet manufacturers, and perfected his improvement in their factory on December 20, 1881, which was the date of the invention, although he had previously made advances towards it, which, it is conceded, had not reached knitted Astrakhan. No English patent was taken out, and in May, 1883, Bywater came to this country, entered into the employment of the complainant, and applied for a patent in December of that year. James Booth, of Halifax, England, is a partner in the firm of James Booth, who are manufacturers of knitted fabrics. He made an improvement in this class of goods in the early part of 1881, filed on February 22d of that year an English provisional specification for a patent thereon, and the patent was sealed in August, 1881. He placed his goods upon the English market early in 1881 under the name of "kyrle," sold six pieces to Luke Gledhill & Co., who shipped them to Herman Steinbach & Co., of New York, on May 12, 1881, by whom five pieces were sold to various dealers in this country. Samples of these Gledhill goods were preserved, and are an exhibit in this case. Booth's patent was in part for a wheel which was claimed to be new. Suit was brought upon it against an infringer. Hargreave & Nussey joined in the defense. The wheel was found to be old, the suit was abandoned, and thereafter the fabric was made by rival manufacturers. James Booth and Hargreave & Nussey have each continued to make this class of goods to the present time, which are called in England "curl" or "kyrle," or Astrakhan. The fabric of the Booth patent was formed upon a circular knitting machine, and is described in the specification as follows:

"I form the back and body of the fabric of the ordinary looping threads, using for such purpose ordinary wool yarn, capable of being afterwards felted together; and I form the face of the fabric on that part which has usually been considered the back. For the face of the fabric I employ worsted or long-fibered yarn, which will not felt with the back or body, and which is laid in between the needles in any desired order; such face yarn being tied to the looping thread by the tie thread usually employed in the manufacture of fleecy-backed hosiery. The means I employ for laying the face yarn in between the needles are those ordinarily employed for laying in straight threads. The fabric, after removal from the machine, is subjected to the process known as 'fulling' or 'felting,' whereby the back, ground, or knitted portion of the fabric becomes considerably shrunk, and the fibers thereof felted together, whilst the face yarn, being laid in straight, and tied to the body or back at longer or shorter intervals, is caused to project from the back or body of the fabric in the form of loops, thereby producing a very ornamental appearance."

The fabric which is shown in the Gledhill samples has a smooth back, and a looped or somewhat curly face. The face yarn does not

felt, and therefore projects from the back in the form of loops, which are curled, but do not have the matted appearance of the modern Bywater loops. As the Booth loops are made of long-fibered worsted, they will necessarily twist and curl. There is no substantial difference in the material of the two fabrics, as described in the specifications of the two patents. The Bywater looped face is made of "mohair, worsted, or other yarn, and the back is woolen." The Booth back is made of "ordinary wool yarn," and the face is formed of "worsted or long-fibered yarn which will not felt with the back." That ordinary woolen yarn and worsted yarn, which is a yarn of long staple and combed, are, as articles of trade and manufacture, different articles, is well known. The alleged point of difference in the two patents and in the article from which the fabric is made is that knitted Astrakhan must be made of curly, crinkly yarn, and that Booth simply tells the public to take a long-fibered yarn. It is true that the fabric should be made of curly yarn, and it is also true that the Bywater patent does not say so, but leaves the selection of the materials to the acquired knowledge of the workman. It is true that all long-fibered wool does not have an inherent tendency to curl, and that the spinning and combing of the wool are varied to give it that tendency; but it is also true that a large part of long-fibered wool does curl, and, if the spinner seeks yarn of long fiber, he will probably find that his yarn is curly. The knitter, with either the Booth or the Bywater patent before him, has the knowledge of the craft as to the character of the worsted which must be used to produce the effect which the public or which existing fashion prefers, and makes his selection accordingly. The Bywater patent told the manufacturer, in express terms, nothing which the Booth patent had not told him previously, because he had been told that a knitted fabric with a looped surface is made by using unfeltable worsted, and Bywater told him, in order to make a fabric having the appearance of looped or Astrakhan cloth, to use mohair, worsted, or other yarn. That the face yarn must not felt with the back was then obvious, and neither patent spoke of the necessity of changing the adjustment of the machine in order to produce longer or shorter loops, because such information was needless. It is doubtless true that a distinction can be traced in the two patents as to the purpose which was in the mind of each patentee; the earlier patentee having in mind to make a knitted fabric which resembled woven Astrakhan, in having a looped face varied according to the fancy of the knitter, and the later patentee having in mind to closely imitate woven Astrakhan. But, in our opinion, that fact gives to the Bywater improvement nothing of a patentable character. It consisted simply in the selection of yarns to produce a particular effect or particular style of goods, and, after Booth had told the public (if, indeed, he told them anything of novelty) how to produce a knitted loop fabric, there was nothing of an inventive character in the selection of yarns to make a looped curly fabric more curly and matted. The validity of the Bywater patent should not rest upon the fact that the Booth patent said nothing about curly wool, but its validity depends upon the question whether, after the Booth improvement had been described,

there was anything of an inventive character left. Bywater, by a wise choice of yarns and continued mechanical improvement, succeeded in presenting to the public an attractive fabric, and had the great merit of being patient in the work of mechanical development, but the inventive idea was absent.

In the case of Hanifen v. Godshalk Co., in the Third circuit, the decision turned, in the circuit court (78 Fed. 811), upon the question whether the Booth patent was an anticipation of the Bywater patent. Upon rehearing, Judge Dallas was led to change his opinion, and, upon the testimony of experts, held that the Bywater patent was anticipated. Upon appeal (28 C. C. A. 507, 84 Fed. 649), a majority of the circuit court of appeals were of opinion that the testimony of the experts was not satisfactory, and that the Booth patent was not an anticipation. Judge Butler dissented, and concluded his dissent by saying, "Granting, however, that there is some difference in the two methods, it is not such, in my judgment, as involves the exercise of invention." In the record before this court, testimony not in the Godshalk Case had been introduced,—whether of vital importance or not, we have not considered, although it undoubtedly presented the defendants' view of the case more positively; but we do not regard the question of the Booth anticipation as the controlling one in the case. Indeed, the importance of the Booth patent consists in its bearing upon the question of patentable invention, and we coincide in the view of Judge Butler that, upon the admitted facts in the case, the work of Bywater was the mechanical work of an intelligent spinner, and was destitute of the element of invention. That great deference should be paid to the opinion of the circuit court of appeals of the Third circuit is true, and we have conformed to that duty, but have not been able to accord with the result which that court reached. The decree of the circuit court is reversed, with costs of this court, and the case is remanded to that court, with instructions to dismiss the bill, with costs.